# JACKIE KEVIN HARRIS v. STATE OF MARYLAND

[Nos. 18 and 19, September Term, 1982.]

*Decided February 7, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Michael R. Braudes, Assistant Public Defender,* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Stephanie J. Lane, Assistant Attorney General,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court. COLE and DAVIDSON, JJ., concur in Part III of the opinion and concur only in the result of Parts I and II. MURPHY, C. J., and SMITH and RODOWSKY, JJ., dissent in part and concur in part. MURPHY, C. J., filed a dissenting and concurring opinion at page 340 *infra,* in which SMITH, J., concurs; RODOWSKY, J., concurs with views expressed herein, except as to Part I of this opinion.

This case comes before us upon automatic review of imposition of the death penalty pursuant to Maryland Code (1957, 1982 Repl. Vol.), Article 27, § 414. The appellant, Jackie Kevin Harris, entered a plea of guilty to murder in the first degree, two counts of armed robbery, and a handgun violation, and was found guilty of all counts by the Circuit

Court for Baltimore County. Following his waiver of a jury trial to determine his sentence, and after a hearing, the trial judge imposed the death penalty plus a total of 20 years on the related offenses to run consecutively to the death sentence.

The appellant asks us to reverse his conviction because his guilty plea was not made "voluntarily with an understanding of the nature of the charge and the consequences of the plea." He also claims that he was denied effective assistance of counsel and that his waiver of a jury trial was not knowing and voluntary. Our decisions regarding these issues make it unnecessary to address other issues raised by the appellant.

Little need be said about the underlying facts giving rise to this case. The parties have submitted an agreed statement of facts which we set forth in pertinent part:

> "[O]n August 9, 1981, at approximately 6:30 a.m., Appellant and Carl Brown entered the Sportsman's Limited Sporting Goods Store located at 136 Chartley Drive in Baltimore County for the purpose of perpetrating an armed robbery. Appellant was armed with a .22 caliber automatic pistol. The sole employee in the store at the time of the holdup was Stephen Conrad Hviding. During the course of the robbery, Hviding reached for a handgun which was concealed upon his person for purposes of protection. Appellant shot him before he could use the weapon, and then moved closer and shot him five additional times. He died as a result of the gunshot wounds. Thereafter, Appellant and Brown broke into and robbed a locked gun case, and robbed a customer of the store, George Lindley, at gunpoint. After forcing Lindley to lie face down on the floor, Appellant and Brown fled, carrying various weapons and ammunition in a canvas carrying case they found at the scene."

(1)

Pursuant to Maryland Rule 731 c, the trial court, upon being advised that the appellant was going to plead guilty to the charges against him, held a hearing to determine if the proffered plea was being made voluntarily with an understanding of the nature of the charges and the consequences of the plea. During the course of the trial judge's examination of the appellant, the following colloquy took place:

"Q   Now, it is my understanding that you want to plead guilty to the first count of that indictment which charges you on August the 9th, 1981, with feloniously, wilfully and of deliberately premeditated malice aforethought, that you did kill and murder one Stephen Conrad Hviding, H-V-I-D-I-N-G. That charge, to which you are pleading guilty in this count, is first degree murder. That charge, also, charges second degree murder and manslaughter, but you are pleading guilty, as I understand it, to first degree murder in that count. Is that the charge to which you want to plead guilty in that count?

A   The way you read it, right?

Q   Yes, sir.

A   The way you read it, it happened. I am pleading guilty to the charge, not — I am pleading guilty to the charge, but not the way you are saying, I done it like that.

Q   Well, I'm not asking you about whether you did it or whether you didn't do it at this point, Mr. Harris, what I'm asking you is, I want to make sure I understand and you understand what you are pleading guilty to. Now, the first count charges first degree murder, second degree murder and manslaughter of Stephen Conrad Hviding. Now, it charges all three of those. You are pleading guilty, I have been told by the State, and you have entered

a plea of guilty, at this point, you and your lawyer, of those three charges in that count to first degree murder.

A    Yes, sir.

Q    Now, is that what you want to plead guilty to?

A    Yes, sir."

Thereafter the record discloses that the trial judge inquired of the prosecutor:

"THE COURT: Now, Mr. Levitz, I am now going to inquire of Mr. Harris whether or not he knows the nature of these offenses, and explain to him the nature of these offenses. Do you know, with regard to the first count, there are two possibilities that the State has to prove in that case, felony murder or murder premeditated, wilfull and deliberate. Now, is the thrust of the case, the State's case both of those or just the felony murder, so as I go over the nature of the offense with him, I will explain it to him, accordingly.

MR. LEVITZ: Well, the thrust of the State's case is both, according to the Statement of Facts."

To which the appellant's counsel responded:

"MR. RUSSELL: I foresee some problem with that, your Honor. I just want to forewarn you. I don't agree with Mr. Levitz on that. I see it as felony murder. There is no premeditation.

THE COURT: Well, I will explain to Mr. Harris what the State would have to do, what the nature of the offense is, and we will see where we go from there."

The trial judge then proceeded to explain to the appellant the nature of the charge of murder in the first degree, making clear that, under the circumstances, there were two ways the State could prove the charge, i.e., by proving the killing was wilful, deliberate and premeditated, or by

proving that the killing occurred in the perpetration of or attempt to commit certain crimes, including robbery. The appellant told the trial judge that he understood and that he was pleading guilty of his own free will. Subsequently, the trial judge advised the appellant of the possible consequences of a conviction and what he was giving up by pleading guilty. After an agreed statement of facts was presented to the court, the appellant told the court that he agreed to those facts. The trial judge then found that the statement of facts was sufficient to prove the appellant's guilt of the charges beyond a reasonable doubt and ordered the clerk to enter up a finding of guilt as to the four counts (the docket entry reflects, "Verdict: GUILTY as to Counts one (1) 1st Degree Murder, . . .").

During the subsequent sentencing proceeding, it came to light that the appellant claimed he only pleaded guilty to felony murder, not premeditated murder. The appellant's counsel stated that he had made himself clear on the record on this point, and the trial judge stated that the record would speak for itself. During closing argument, the appellant's counsel based his entire argument on the theory that the appellant was guilty of felony murder and since the State had shown no aggravating factor other than the underlying felony, the death penalty could not be imposed. The trial judge, in rendering his decision, stated in pertinent part:

> "Now, in that proceeding, the defendant pled guilty to the first count, first degree murder; the second count, the fourth count and the sixth count.
>
> As to the first degree murder count, count number one, and this is all in the Court Reporter's notes which I went over very carefully, the Court asked the State what the thrust of its case was as to the first count, and the State said that it was as to both murder in the first degree for premeditated, wilful and deliberate act and for felony-murder. The Court went over with the defendant the rights that he is waiving by pleading guilty, and I explained to the

defendant the nature of the offense in the first count, and I explained that the State could obtain a conviction on, either, premeditated, wilful and deliberate act, first degree murder, or, felony-murder or both, and defined each of those for him. The proceedings went on, and, at the end of the proceedings, the Court heard a statement of facts, and the Court then found the defendant guilty of first degree murder and the second, fourth and sixth counts.

Now, examining the facts in this case and examining that record, the defendant did not plead guilty to felony-murder, he pled guilty to first degree murder."

Thereafter the trial judge found the facts sufficient to support a finding of guilt both as to wilful, deliberate, premeditated murder as well as felony murder.

The appellant now contends that he was "confused . . . as to the nature of the offense to which the plea was being entered." Furthermore, he argues that his "counsel did not understand to what charge [he] was pleading guilty" and that "[a] confused defendant advised by a mistaken counsel does not provide a basis for an acceptable guilty plea."

It is now settled that the court may not accept a guilty plea unless, after an examination of the defendant on the record in open court, it determines that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea. Md. Rule 731 c; *State v. Priet,* 289 Md. 267, 424 A.2d 349 (1981). In *Priet,* Chief Judge Murphy stated for the Court:

"Consistent with the principles espoused in the majority of these state and federal cases, and with the rationale underlying our decision in *Davis,* Rule 731 c does not impose any ritualistic or fixed procedure to guide the trial judge in determining whether a guilty plea is voluntarily and intelligently entered. The rule does not require that the

precise legal elements comprising the offense be communicated to the defendant as a prerequisite to the valid acceptance of his guilty plea. Rather, by its express terms, the rule mandates that a guilty plea not be accepted unless it is determined by the court, after questioning of the defendant on the record, that the accused understands the 'nature' of the charge. This, of course, is an essential requirement of the rule and must be applied in a practical and realistic manner. It simply contemplates that the court will explain to the accused, in understandable terms, the nature of the offense to afford him a basic understanding of its essential substance, rather than of the specific legal components of the offense to which the plea is tendered. The nature of some crimes is readily understandable from the crime itself. Necessarily, the required determination can only be made on a case-by-case basis, taking into account the relevant circumstances in their totality as disclosed by the record, including, among .other factors, the complexity of the charge, the personal characteristics of the accused, and the factual basis proffered to support the court's acceptance of the plea. *See, e.g., Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), holding that the voluntariness of a guilty plea 'can be determined only by considering all of the relevant circumstances surrounding it.' *Id.* at 749." 289 Md. at 287-88, 424 A.2d at 359-60.

In the instant case, the record clearly demonstrates that while the appellant did not agree that he committed the murder in a wilful, deliberate and premeditated manner, it was explained to him that felony murder would constitute first degree murder; it is also clear that he pleaded guilty to first degree murder. In our view, the trial judge thoroughly explained the nature of first degree murder and we have no doubt that the appellant understood the nature of that offense. The fact that he disagreed with the method of accom-

plishing that first degree murder is simply irrelevant to the complaint that the appellant now makes. He was not entering a plea of not guilty to one degree of murder and a plea of guilty to another degree of murder as would be allowed by Md. Rule 731 e; rather, he was pleading guilty to first degree murder. We see no merit to the appellant's contention.

(2)

The appellant also contends that he was denied the effective assistance of counsel to which he was entitled under the Sixth Amendment to the United States Constitution, applicable to a state criminal prosecution through the Fourteenth Amendment. He further argues that this denial of effective assistance of counsel occurred during the guilt or innocence stage as well as in the sentencing proceeding.

In light of our conclusion with respect to whether the appellant's waiver of a jury trial at the sentencing proceeding was knowing and voluntary, to be discussed below, we need not consider the appellant's complaint of ineffective assistance of counsel during that proceeding.

With respect to the appellant's complaint of ineffective assistance of counsel during the guilt or innocence stage of the trial, he appears to contend that the mere allowance by his attorney of his guilty plea without having obtained something in return amounts to ineffective assistance of counsel. In *Johnson v. State,* 292 Md. 405, 434-435, 439 A.2d 542, 559 (1982), we held that consideration of a claim of ineffective counsel is best left to a post conviction hearing, observing:

> "We previously stated in *State v. Zimmerman,* 261 Md. 11, 24, 273 A.2d 156, 163 (1971), '[w]hat we consider to be the desirable procedure' for consideration of claims of inadequate assistance of counsel when the issue was not presented to the trial court, and we adhere to that view. In essence, it is because the trial record does not ordinarily

illuminate the basis for the challenged acts or omissions of counsel, that a claim of ineffective assistance is more appropriately made in a post conviction proceeding pursuant to Md. Code (1957, 1976 Repl. Vol., 1981 Cum. Supp.), Art. 27, § 645A. Moreover, under the settled rules of appellate procedure, a claim of ineffective assistance of counsel not presented to the trial court generally is not an issue which will be reviewed initially on direct appeal, although competency of counsel may be raised for the first time at a section 645A post conviction proceeding. Upon such a collateral attack, there is presented an opportunity for taking testimony, receiving evidence, and making factual findings concerning the allegations of counsel's incompetence. By having counsel testify and describe his or her reasons for acting or failing to act in the manner complained of the post conviction court is better able to determine intelligently whether the attorney's actions met the applicable standard of competence. Where, as here, the record sheds no light on why counsel acted as he did, direct review by this Court would primarily involve 'the perilous process of second-guessing', perhaps resulting in an unnecessary reversal in a case where sound but unapparent reasons existed for counsel's actions." (Numerous citations omitted.)

In accordance with *Johnson,* we shall leave consideration of the appellant's ineffective representation claim for consideration upon post conviction proceeding should the appellant choose to pursue this matter.

(3)

After the appellant's guilty plea had resulted in a verdict of guilty, he elected to waive a jury trial for the sentencing proceeding and have the trial judge determine sentence. He now argues that a waiver of a jury for the sentencing pro-

ceeding must be shown to be knowing and voluntary as a waiver of a jury trial at the guilt or innocence phase of the proceedings. Building on this premise, the appellant argues that the record demonstrates that his decision to waive a jury was not knowing, and thus not voluntary, because he was misled by the trial judge. This is so, he contends, because the trial judge, when explaining to him his options and how the jury would generally function, did not tell him that pursuant to Code (1957, 1982 Repl. Vol.), Article 27, § 413 (k) (2), "[i]f the jury, within a reasonable time, is not able to agree as to sentence, the court shall dismiss the jury and impose a sentence of imprisonment for life." This omission, it is argued, left him unaware of what he was relinquishing. Specifically, the appellant asserts that "[r]ather than giving up a procedure where he would be sentenced by a unanimous verdict of twelve people, he gave up a sentencing proceeding where unanimity would be required for death, but only one holdout would result in the imposition of a life sentence." The State, while conceding that *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980), indicated the Court should review the record in a capital case where a jury trial is waived to determine whether the waiver was effective, argues that the record in the instant case shows the waiver was effective. The State points out that the trial judge carefully explained to the appellant that the sentencing jury would have to be unanimous in order to impose a sentence of death and, consequently, he was not misinformed.[1]

We believe there is merit to the appellant's argument. Notwithstanding the fact that the trial court informed the appellant that the decision of the jury would have to be unanimous, the omission regarding section 413 (k) (2) made the waiver ineffective. It is one thing to be told that the jury

---

1. We need not here decide whether the waiver of a jury trial in a sentencing proceeding under Md. Code (1957, 1982 Repl. Vol.), Art. 27, § 413, to be effective, must comply with the strictures of Md. Rule 735. We do suggest, however, that to be an effective waiver, it must be shown to be made knowingly and voluntarily.

would have to be unanimous before imposing death or life imprisonment, but quite another to not being made aware that if, after a reasonable time, the jury is unable to agree, the court shall dismiss the jury and impose a life sentence. It is not difficult to see how this additional information may very well be significant to one convicted of first degree murder and facing a possible sentence of death. We believe this information should have been given to the appellant. Because it was not, we shall vacate the sentence of death and remand for a new sentencing proceeding under section 413.

In view of our conclusions above, the remaining issues raised by the appellant regarding the sentencing proceeding need not be considered.

> *Verdicts affirmed.*
> *Sentence vacated.*
> *Case remanded for a new sentencing*
>   *proceeding.*
> *Costs to be paid one-half by*
>   *Baltimore County and one-half by*
>   *appellant, Jackie Kevin Harris.*

Cole and Davidson, JJ., concur in Part III of the opinion. As to Parts I and II, they concur in the result only.

*Murphy, C. J., dissenting in part and concurring in part:*

While I agree with that part of the Court's opinion affirming the convictions in this case, I do not agree that the death sentence imposed upon Harris must be vacated on the ground that his election to waive the intervention of a jury at the capital sentencing hearing was not knowing and voluntary.

The majority reasons that Harris' jury waiver was ineffective because the record does not affirmatively demonstrate that he was advised of the provisions of Maryland Code (1982 Repl. Vol.), Article 27, § 413 (k) (2), *i.e.,* "If the jury, within a reasonable time, is not able to agree as to sentence, the court shall dismiss the jury and impose a sentence of

imprisonment for life." The Court, adopting Harris' arguments, concludes that the failure of the trial judge to specifically inform Harris of the substance of this section, when explaining the capital sentencing procedure to him, resulted in his being unaware of what he was relinquishing in waiving a jury, namely, a sentencing proceeding where jury unanimity would be required for death, but only one holdout would result in the imposition of a life sentence. Because I believe the majority's reasons for vacating the death sentence to be badly strained and totally at odds with the governing law, I respectfully dissent.

I

Maryland's death penalty statute requires a separate sentencing proceeding to determine whether a defendant should be sentenced to death or imprisonment for life. Section 413 (b) (3) of Art. 27 specifies that the sentencing hearing may be held "[b]efore the court alone, if a jury sentencing proceeding is waived by the defendant." Maryland Rule 735 b prohibits the court from accepting a jury trial waiver "until it determines, after an examination of the defendant on the record in open court by the court, by the State's Attorney, by the attorney for the defendant, or by any combination thereof, that the defendant knowingly and voluntarily waived a jury trial." While this rule, by its terms, is applicable only at the guilt or innocence stage of the trial process, and not at a capital sentencing proceeding, nevertheless I think it properly states the substance of the controlling law in this case, *i.e.,* that to constitute an effective waiver of the statutory right to a jury in a capital sentencing proceeding, the waiver must be knowing and voluntary.

The determination of whether a jury is knowingly and voluntarily waived turns on whether the waiver constitutes an intentional relinquishment or abandonment of a known right, namely, that the defendant had full knowledge of his right to a jury and a basic understanding of the nature of a

jury proceeding; the imparting of detailed information regarding the functioning of the jury is not an essential prerequisite to a valid waiver. *See Dortch v. State,* 290 Md. 229, 428 A.2d 1220 (1981); *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979); *State v. Zimmerman,* 261 Md. 11, 273 A.2d 156 (1971). Whether a jury was knowingly and voluntarily waived is not governed by any precise litany or fixed ritual as it once was under former Rule 735. *See Countess v. State, supra.* Rather, that determination now depends upon the particular facts in each case, taking into account the relevant circumstances in their totality as disclosed by the record. *Dortch v. State, supra,* 290 Md. at 235.

The record in this case discloses that at the outset of the sentencing proceeding the trial judge advised Harris that he had a right to a jury trial. The court explained:

> "[A] jury trial means that you have a right to participate, along with the State, in selecting twelve people who would be the jury in the case. Once they are selected, they are sworn in and they become the jury, and they hear all the testimony and all the evidence in the case . . . ."

Thereafter, the trial judge extensively outlined the substance of the capital sentencing procedure as set forth in § 413, explaining in detail the provisions of that section. He told Harris that the jury would have to determine whether the State proved the existence of an aggravating circumstance beyond a reasonable doubt. The court advised Harris that the State relied on only one aggravating circumstance, which it explained to him. The court next told Harris that "[i]f all twelve of the jurors agree that that aggravating circumstance has not been proved beyond a reasonable doubt, then, the sentence in this case would be life." Asked by the court if he understood, Harris said that he did. The trial judge next stated that if the jury was convinced beyond a reasonable doubt that the aggravating circumstance was so proven, it would then consider whether, by a preponderance of the evidence, any of eight mitigating cir-

cumstances set forth in § 413 were established. The court explained each of the mitigating circumstances to Harris, advising him that "if all twelve of the jurors should find that there are not any mitigating circumstances, then, the sentence would be death." The court continued its explanation, stating:

> "If all twelve of the jurors agree that there is a mitigating circumstance or more than one mitigating circumstance, then, they would then proceed to weigh the mitigating circumstance or the mitigating circumstances to see whether the mitigating circumstances outweigh the aggravating circumstances. Now, if the jury finds that, by a preponderance of the evidence, the mitigating circumstances do not outweigh the aggravating circumstances, then, the sentence shall be death. If the jury were to find that the mitigating circumstances outweigh the aggravating circumstances, the sentence would then be life imprisonment."

Asked by the court if he understood, Harris said that he did. The court next advised Harris that "just as much as you have a right to a jury trial, you have a right to waive the jury trial . . . or the right to have the jury make this determination in this sentencing procedure." The trial judge explained that if Harris waived his right to a jury, the court would decide the same issues as would the jury had he elected to have a jury pass upon his sentence. Again asked whether he understood, Harris said that he did. The court then stated: "I'm not telling you what you should do . . . I want you to make your decision as to whether you want to have a jury trial here this morning or do you want to waive your right to a jury trial." Harris replied: "I will waive my right to a jury trial." Asked again whether he wanted to waive his right to a jury trial, Harris replied, "Yes, sir." The court then asked both the State's Attorney and defense counsel whether there was anything he had not explained; each answered in the negative.

It is clear to me that the trial judge painstakingly explained to Harris the choice between a jury and a court sentencing proceeding. None of the court's advice was erroneous and nothing which it said could possibly have misled Harris in making his decision. Knowing of his right to a jury sentencing proceeding, and being afforded a basic understanding of the nature of that proceeding by the court, I conclude that Harris intentionally, knowingly, and voluntarily relinquished his statutory right to a jury sentencing hearing.

That the record does not disclose that the court told Harris of the provisions of § 413 (k) (2) does not, of itself, render his jury trial waiver unknowing or involuntary. To so conclude is to construct a per se rule out of thin air, requiring that that item of information must be imparted to the defendant in all cases as an absolute prerequisite to a jury trial waiver in a capital sentencing proceeding. Such a rule, as I see it, represents an abrupt departure from our recent cases which espouse the principle that no particular litany need be followed in adjudging whether a jury trial has been knowingly waived or, in like vein, whether a guilty plea was knowingly or voluntarily entered. *See Dortch, supra; State v. Priet,* 289 Md. 267, 424 A.2d 349 (1981); *Davis v. State,* 278 Md. 103, 361 A.2d 113 (1976). Under the rudderless rule adopted by the majority, trial judges are left to their own devices in attempting to ascertain what other bits of information concerning jury functions, deliberations and actions must be imparted to the defendant before a jury waiver can properly be declared as knowing and voluntary. The majority's holding today carries us over the edge of a slippery slope — a slope without contours, without any clearly marked path, a slope without any definitive bottom.

## II

At the very least, the majority should, instead of vacating the death sentence, apply the rule set forth in *State v. Zimmerman, supra,* and leave resolution of the question of

whether Harris knowingly waived a jury sentencing proceeding for consideration under the Post Conviction Procedure Act, Code, Art. 27, § 645A, *et seq.* In *Zimmerman,* as here, it was claimed that the right to a jury trial had not been knowingly and voluntarily waived. We there focused on "the time and place for challenging the knowingness of . . . [a jury] waiver," concluding that the matter was best resolved in a post conviction proceeding where evidence could be taken and facts developed to ascertain whether a jury trial waiver was knowing and voluntary. 261 Md. at 12-13. Under the *Zimmerman* rationale, after the facts have been fully developed at the post conviction evidentiary hearing, the appellate court will have a full record before it and "will not be placed in the position of speculating as to whether the complaint may be appellate afterthought." *See Covington v. State,* 282 Md. 540, 545, 386 A.2d 336 (1978). As we recently pointed out in *Johnson v. State,* 292 Md. 405, 439 A.2d 542 (1982), the provisions of the Post Conviction Procedure Act apply to any person "under sentence of death or imprisonment." Section 645A (a). Indeed, in *Johnson,* we affirmed the continuing viability of the principle enunciated in *Zimmerman.* We declined in *Johnson* to consider on direct appeal an allegation of ineffective assistance of counsel, stating that such a claim, not having been raised at trial, was more appropriately considered in a post conviction proceeding. That same course should be followed in the present case to permit a studied evaluation, upon a proper record, as to whether Harris' jury trial waiver was, in fact, knowing and voluntary.

It is by no means unlikely that Harris was fully advised by his attorney, or otherwise understood the provisions of § 413 (k) (2). If so, it would be a travesty to afford him a new sentencing hearing on the ground that he did not know of the provisions of this section when he so clearly waived his jury trial right. To insist that an appellate court reach its conclusion with full information before it in no way deprives Harris of any rights. As in *Covington, supra,* 282 Md. at 545-46, we think this procedure is "by far the sounder approach to the administration of justice."

Judge Smith authorizes me to say that he joins in the views expressed herein. Judge Rodowsky concurs with the views expressed herein, except as to Part I of this dissenting and concurring opinion.