No. 88–7619. ROBERTSON *v.* CALIFORNIA. Sup. Ct. Cal. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would grant the petition for certiorari and vacate the death penalty in this case. Even if I did not take this view, I would grant the petition because it raises the recurring issue whether evidence of prior unadjudicated criminal conduct may be introduced at the sentencing stage of a capital trial. As I have noted before, see, *e. g., Miranda* v. *California,* 486 U. S. 1038 (1988) (MARSHALL, J., dissenting from denial of certiorari); *Williams* v. *Lynaugh,* 484 U. S. 935 (1987) (MARSHALL, J., dissenting from denial of certiorari), the States' highest courts have reached varying conclusions on this issue.

In addition, the petition poses a second question of profound constitutional significance: whether a defendant's waiver of his

right to a jury in a capital sentencing proceeding is voluntary, knowing, and intelligent when no evidence indicates that he was aware of a state statute requiring the court to impose a life sentence if the sentencing jury failed to reach a unanimous decision. The California statute at issue here provides that "[i]f the trier of fact [at the sentencing stage] is a jury and has been unable to reach a unanimous verdict as to what the penalty shall be, the court shall dismiss the jury and impose a punishment of confinement in state prison for life without possibility of parole." 1977 Cal. Stats., ch. 316, § 12. State high courts faced with the issue whether a defendant must be aware of similar capital sentencing provisions have reached differing conclusions. Compare *Harris* v. *State*, 295 Md. 329, 339–340, 455 A. 2d 979, 984 (1983) (holding that a court must explain the effect of a jury deadlock for a waiver to be effective), with *People* v. *Morgan*, 112 Ill. 2d 111, 141–142, 492 N. E. 2d 1303, 1315–1316 (1986) (holding that a court need only explain that a unanimous vote is required before a jury can impose the death penalty), cert. denied, 479 U. S. 1101 (1987).

In 1978, a jury convicted Andrew Robertson of murder and sentenced him to death. On appeal, the California Supreme Court vacated that sentence and remanded the case to the trial court. 33 Cal. 3d 21, 655 P. 2d 279 (1982). In a second sentencing proceeding, Robertson indicated his intention to waive his right to a jury. The court then asked him several questions in an attempt to ascertain if Robertson was aware of the effects of a waiver. At no time during the colloquy did the judge read or paraphrase the jury deadlock provision; instead, the court simply stated: "You understand, also, that if you do waive jury and submit [your sentencing] to the Court, the Court will act solely. If you have a jury trial, before a verdict can be returned either way, it requires unanimous agreement of all twelve jurors; do you understand that?" Pet. for Cert. 8. Robertson answered that he understood and then waived his right to a sentencing jury. He was again sentenced to death; this time, the California Supreme Court affirmed.

Robertson now claims that his sentence should be overturned because his agreement to waive a jury in the second sentencing proceeding was not voluntary, knowing, and intelligent. Petitioner concedes that the court's instruction was literally correct; if the jurors were not unanimous in recommending life imprisonment, they could not return a verdict to that effect. It is

also true, however, that if they were not unanimously in favor of death, even if only one juror refused to agree to the death penalty, then the *court* was required to order a term of life imprisonment.

In rejecting this claim the California Supreme Court clearly could not rely on the argument that the trial court's instruction fairly apprised Robertson of the relevant law. Rather, the court presumed as a matter of law that Robertson's counsel must have informed him of that part of the law as to which the trial court's statement was misleading. The court adopted this presumption in the absence of any evidence that Robertson's counsel had informed him, or indeed even knew, of the relevant rule of law. Such a presumption is impossible to reconcile with this Court's decisions placing on the state the burden of establishing a valid waiver of a fundamental constitutional right. See, *e. g., Michigan* v. *Jackson,* 475 U. S. 625, 633 (1986). Furthermore, it is directly contrary to our precedents requiring that any doubts arising inevitably from a silent record be resolved in favor of protecting the defendant's right to be sentenced by a jury. See *Carnley* v. *Cochran,* 369 U. S. 506, 516 (1962) ("Presuming waiver [of Sixth Amendment rights] from a silent record is impermissible"); *Boykin* v. *Alabama,* 395 U. S. 238, 242–243 (1969) (applying *Carnley* to jury waiver). A presumption that defendant's counsel will always inform him of the relevant factors in a decision to waive constitutional rights amounts to a rule that all waivers made after the defendant has retained counsel *necessarily* will be considered voluntary, knowing, and intelligent. Such a rule offends common sense and impermissibly strips a defendant of constitutional protections long recognized by this Court.

Respondent also argues that the court's presumption of knowledge was appropriate in this case because Robertson had previously been sentenced in a capital proceeding by a jury and thus was steeped in the intricacies of California capital sentencing law. But the jury in the first sentencing proceeding was unanimous in favor of death; in such a circumstance, there is no support for an assumption that Robertson was "familiar" with what might have happened at his first sentencing had one or more jurors held out. Indeed, this case is an especially inappropriate one in which to assume the defendant's knowledge of the law. A "hung jury" traditionally results in a mistrial, not the automatic imposition of a certain penalty; thus, even a sophisticated defendant might not be

aware of the peculiar ramifications of a deadlock in the capital sentencing context.

Lastly, the state court reasoned that Robertson's arguments would lead to the adoption of a standard "too stringent for any situation; no waiver requires the court to explain every single conceivable benefit and burden of the choice being made." 48 Cal. 3d 18, 38, 767 P. 2d 1109, 1118 (1989) (footnote omitted). To be sure, the defendant need not be informed of every minute consideration that might be of the faintest interest to him. Applied to this case, however, that reasoning is disingenuous; informing a defendant that he will automatically receive the lesser penalty if the jury is unable to agree after a reasonable time is plainly relevant, if not central, to a rational defendant's choice between being sentenced by a judge or a jury. That the trial court believed it necessary to give the defendant some (albeit misleading) information on precisely the statute implicated here evidences the crucial role the issue plays in a knowing and voluntary jury waiver. Requiring a court to impart this information accurately is hardly imposing an unreasonable burden where the issue is literally one of life and death.

I dissent.