582 A.2d 794

James Russell TRIMBLE

v.

STATE of Maryland.

No. 75, Sept. Term, 1988.

Court of Appeals of Maryland.

Dec. 7, 1990.

250

Robert E. Morin (Fisher, Morin & Kagan–Kans, on brief), Washington, D.C., for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS * and BLACKWELL,* JJ.

COLE, Judge.

On March 12, 1982, James Russell Trimble was found guilty of first degree murder, first degree rape, two counts of first degree sexual offense, two counts of kidnapping, and one count of assault by a jury in the Circuit Court for Baltimore County. His only defense was insanity. After the jury verdict, Trimble elected to be sentenced by the court. On March 19, 1982, Trimble was sentenced to death on the murder count and to three life terms plus seventy years on the remaining counts. Pursuant to Maryland Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27, § 414, we reviewed Trimble's conviction and death sentence and affirmed. *Trimble v. State*, 300 Md. 387, 478 A.2d 1143 (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1231, 84

---

* Blackwell, J., and Adkins, J., now retired, participated in the hearing and conference of this case while active members of this Court; but did not participate in the decision and adoption of this opinion.

L.Ed.2d 368 (1985). Thereafter, Trimble filed a petition in the Circuit Court for Baltimore County for post conviction relief pursuant to the provisions of Maryland Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27, §§ 645A–645J, the Post Conviction Procedure Act. The Circuit Court for Baltimore County denied Trimble's petition and we granted his application for leave to appeal. We now respond.

Briefly, the facts of the case are as follows: On July 3, 1981, Melanie Rae Newsom and the murder victim, Nila Kay Rogers, were invited by a friend from school to ride around in a van with some of his friends. The two women entered the van with the friend, James Hanna. Inside were Trimble, Terry Evans, Joseph Evans and Anthony Kordell. The Evans brothers, Trimble and Kordell had earlier taken various drugs and drunk beer.

After Newsom and Rogers entered the van, Trimble tried to kiss Newsom. She resisted. He screamed and began to tear off her clothing. Rogers tried to stop him, but Trimble punched her and threw her in the back of the van. He then hit Newsom and forced her to commit fellatio. The two women persuaded the men to stop the van. Hanna and Newsom went into a cornfield. Back in the van Trimble and Joseph Evans raped Rogers. As Kordell tried to pull Rogers out of the van, Trimble repeatedly struck her with a baseball bat. Trimble then dragged her into the cornfield and slit her throat from ear to ear. He left her body in the cornfield where she was later pronounced dead. The cause of death was listed as severe head injuries from a blunt object.

At trial, Trimble offered insanity as his only defense. A state's expert testified that Trimble suffered from antisocial personality and a history of substance abuse but that Trimble was not insane because he did not lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law under the then prevailing insanity standard of Maryland Code

(1982) § 12–107 of the Health–General Article.[1] Another state expert concurred. The first expert further testified that Trimble had a below normal I.Q. of 64 but that that factor did not impair his sanity. The only defense witness testified that Trimble's afflictions caused him to lack substantial capacity to conform his conduct to the law, but the doctor declined to state that conclusion with a reasonable degree of medical certainty or probability.

The jury rejected Trimble's insanity defense and found him guilty. Trimble waived his right to be sentenced by a jury and was sentenced to death by the trial judge.

## I.

■ Trimble's first assignment of error centers on the allegation that his due process rights were violated by the failure of the trial court to conduct a supplemental hearing on the issue of his incompetency and because he was incompetent to stand trial. If a state fails to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent, it denies him due process. *Sangster v. State,* 312 Md. 560, 573, 541 A.2d 637 (1988) citing *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), and *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Maryland's mandate for a court determination of competency is contained in

---

1. Section 12–107 of the 1982 version of the Health–General Article states in full:
 A defendant is not responsible for criminal conduct if, at the time of that conduct, the defendant, because of mental retardation or a mental disorder, lacks substantial capacity:
 (1) To appreciate the criminality of that conduct; or
 (2) To conform that conduct to the requirements of law.
 The current test for insanity is located in Maryland Code (1982, 1990 Repl.Vol.) § 12–108 of the Health–General Article. Subsection (a) of § 12–108 is substantially the same as § 12–107 above, but § 12–108 adds subsection (b):
 (b) **Same—Exclusion.**—For purposes of this section, "mental disorder" does not include an abnormality that is manifested only by repeated criminal or otherwise antisocial conduct.

Md.Code (1982, 1990 Repl.Vol.), § 12–103 of the Health–General Article:

§ 12–103. **Court determination of competency.**

(a) **Hearing.**—If, before or during a trial, the defendant in a criminal case appears to the court to be incompetent to stand trial or the defendant alleges incompetence to stand trial, the court shall determine, on evidence presented on the record, whether the defendant is incompetent to stand trial.

(b) **Court action if defendant competent.**—If, after receiving evidence, the court finds that the defendant is competent to stand trial, the trial shall begin as soon as practicable or, if already begun, shall continue.

(c) **Reconsideration of competency.**—At any time during the trial and before verdict, the court may reconsider the question of whether the defendant is incompetent to stand trial.

■ It is clear from the record, and Petitioner concedes, that the trial court heard evidence regarding his competency to stand trial prior to trial. Clearly, the court followed the mandatory procedure of § 12–103(a) and ruled Trimble competent to stand trial. Trimble does not dispute that finding, but he asserts that his bizarre behavior at trial (red cross painted on his shaved head, sticking out his tongue, rolling his head and making obscene gestures to the jury) warranted another competency hearing. We do not believe another hearing was necessary. Section 12–103(c) states that at any time during the trial, the court *may* reconsider the question of defendant's competency. Subsection (c) is not couched in the mandatory "shall" language of subsection (a). *See, Jones v. State,* 280 Md. 282, 287, 372 A.2d 1064 (1977). Although a determination of competency is required, if the accused is found competent, the court is not required to hold an additional hearing merely because he again alleges he is incompetent. *Johnson v. State,* 67 Md.App. 347, 359, 507 A.2d 1134, *cert. denied,* 479 U.S. 993, 107 S.Ct. 594, 93 L.Ed.2d 595 (1986). Here, Trimble did behave strangely at trial, but it is clear from the record that

such behavior only occurred at trial, not during preparations or meetings with defense counsel, and it stopped as soon as a guard was placed behind Trimble. Also, any questions posed directly to him at trial were answered appropriately. The trial judge could have concluded that the behavior was designed only to disturb the proceedings and was not the result of any real incompetency. We see no need to disturb his decision.

## II.

█ It is also asserted by Petitioner that the jury was not instructed on the essential element of malice for the crime of first degree murder, and the jury was thereby unconstitutionally permitted to infer malice from the facts. Malice embraces the elements of (1) the presence of the required malevolent state of mind, i.e., either (i) the intent to kill, (ii) the intent to do grievous bodily harm, (iii) the intent to do an act under circumstances manifesting extreme indifference to the value of human life, or (iv) the intent to commit a dangerous felony, and (2) the absence of legally adequate justification, excuse or circumstances of mitigation. *Ross v. State*, 308 Md. 337, 340, 519 A.2d 735 (1987). *See also, Gladden v. State*, 273 Md. 383, 388, 330 A.2d 176 (1974); *Brown v. State*, 44 Md.App. 71, 78, 410 A.2d 17 (1979). The judge at Trimble's trial instructed the jury thus:

Now, let me discuss with you what the law is when one is charged with first degree murder as the defendant is charged in this case. Murder in the first degree is the willful, deliberate, and premeditated killing of a human being, without excuse, justification, or mitigation. Willful means that the act which caused the death was done intentionally and with purpose. Deliberate means that there was a full and conscious knowledge of the intention and purpose to kill. Premeditated means that the intention and purpose to kill preceded the killing by some appreciable time.

█ Clearly, the definition of "malice" was adequately set forth to the jury although the actual word was not used.

We find that instruction was adequate properly to instruct the jury that they must find actual malice. The issue is not, at any rate, a proper subject for review in this proceeding because the issue of the instruction was not raised on appeal and was waived. *See, Davis v. State*, 285 Md. 19, 34–35, 400 A.2d 406 (1979).

### III.

■ Petitioner also asserts that the voir dire of the jurors and a failure to excuse for cause those jurors who demonstrated an inability to be impartial denied him a fair trial. Trimble avers the trial court should have undertaken extra measures to ensure that the jury was one that could fairly decide his case and that those jurors who made statements tending to indicate their inability to be impartial were stricken for cause.

The State responds by stating that at the close of jury questioning Trimble had used only 17 of his 20 peremptory challenges, and if the jury selection was unsatisfactory, he should have said so then. Instead, defense counsel indicated the jury was acceptable to him.

We agree with the State. Defense counsel's declaration of his satisfaction with the jury was an affirmative acceptance of those jurors who had been selected. Thus, he may not object now. *See, Mills v. State*, 310 Md. 33, 40, 527 A.2d 3 (1987), *vacated on other grounds*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); *Foster v. State*, 304 Md. 439, 450–53, 499 A.2d 1236 (1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986) and cases cited therein.

### IV.

■ As his next major contention, Trimble asserts he was denied effective assistance of counsel at trial and on appeal. This issue is properly before us because we have held that consideration of a claim of ineffective counsel is best left to a post conviction hearing. *Harris v. State*, 295 Md. 329,

337, 455 A.2d 979 (1983) citing *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982).

To support a claim for reversal based on ineffective assistance of counsel, the principles of the oft-cited case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) require (1) that counsel's performance be deficient, and (2) that the deficient performance prejudiced the defendant so as to deprive him of a fair trial. Trimble lists several reasons for his belief that the requirements of *Strickland* were met, and we shall set them forth in turn.

### 1.

 Trimble states his trial counsel improperly failed to object to an erroneous instruction concerning the issue of insanity, that is, he did not object when the court instructed the jury that mental retardation could not be considered a mental disorder which could negate criminal responsibility under the then prevailing Md.Code (1982) § 12–107 of the Health–General Article. While mental retardation is not itself a mental disorder under § 12–107, it is an alternate indication of lack of criminal responsibility. Trimble believes that if counsel had objected, the arguments he could have made on appeal on this issue would have been strengthened. We see no merit to this contention.

While it is true the instruction given was in contravention of the law and that no objection was made at trial, this court reviewed the matter on direct appeal to ascertain if plain error was present. We found the error was not so compelling as to warrant reversal since there was inadequate evidence linking Trimble's retardation to his alleged inability to conform his behavior to the mandate of the law as required before there may be a finding of not criminally responsible under § 12–107. The retardation, therefore, was irrelevant to the defense of insanity. Thus, a failure to object was immaterial and does not warrant reversal.

### 2.

 Trimble submits there was no valid reason for his attorney not to strike jurors who did not seem impartial.

The jury selection process was not, however, questioned at trial, and defense counsel stated his satisfaction with the juror selection. It appears to us that counsel's decision not to strike certain jurors was nothing more than a trial tactic, which does not constitute a basis for reversal. *See Curtis v. State*, 284 Md. 132, 150, 395 A.2d 464 (1978).

### 3.

█ Counsel's failure to cross-examine the witness Kordell and to object to the prosecutor's closing argument is Trimble's next assignment of error. In closing argument, the prosecutor stated that Kordell, Trimble's co-defendant, had pled guilty to first degree murder, and therefore, the most lenient sentence he could receive under the law was life imprisonment. Trimble alleges that the statement suggests that Kordell, the prosecution's main witness, did not receive a substantial benefit from his plea, and as such, he would not be motivated to tailor his testimony to fit the case of the prosecution. Trimble contends this is misleading and that his attorney should have objected because the jury was not told that although given a life sentence, Kordell could be placed on probation, have his sentence suspended, or be incarcerated in the Patuxent Institute from which he could be released early. This argument is unavailing. We agree with the State. Brief statements in the closing argument regarding the questionable impeachment value of the co-defendant Kordell hardly undermined confidence in the outcome of the case, especially in light of the fact that Trimble had confessed to the murder and raised insanity as his only defense. The necessity of prejudice under *Strickland* was not met.

### 4.

Trimble faults his trial attorney for failing to object to a lack of jury instruction on malice. We rejected the substance of this claim in Section II above and see no reason to reverse on the issue. We have already stated that the jury instruction, while not employing the word "malice" was

functionally correct because the elements of the definition of malice were set forth in the instructions. Since there was nothing to object to, there is no reason to fault the attorney for not objecting. *See, State v. Calhoun,* 306 Md. 692, 736, 511 A.2d 461 (1986), *cert. denied,* 480 U.S. 910, 107 S.Ct. 1339, 94 L.Ed.2d 528 (1987).

### 5.

 Finally, Trimble asserts as error his attorney's failure to advise him that his statements to the psychiatrist could be used against him at the sentencing proceeding. The record indicates that Trimble was told by counsel that what he said to the psychiatrist could be used against him at trial. Although counsel did not specify that it could be used at the sentencing proceeding, Trimble could have inferred that all proceedings relating to his offense were interrelated, that is, what could be used at the guilt/innocence proceeding could be used at the sentencing proceeding. If that were not clear to him, he easily could have asked. Trimble has failed to sustain any claim for ineffective assistance of counsel under the Sixth Amendment.[2]

### V.

 Trimble next argues that the death sentence should be vacated because the trial court did not properly advise him of his right to a jury sentencing. Prior to the sentencing proceedings the court advised:

And if you do use this jury, and I instruct them, and place them out for deliberation, and if, after reasonable time the jury is not able to agree as to a sentence, *I have the authority to dismiss the jury, and impose a sentence for life imprisonment at that point if the jurors are not able to agree as to any sentence.* Do you understand that? (emphasis added)

---

**2.** There are several other issues presented in Petitioner's brief that need not be discussed here.

Trimble answered that he did understand. He now asserts, however, that his waiver of a jury sentencing was not knowing and voluntary as required by law. *See, Harris v. State,* 295 Md. 329, 339, n. 1, 455 A.2d 979 (1983); *Curtis v. State,* 284 Md. 132, 140, 395 A.2d 464 (1978); *Wise v. Warden, Maryland Penitentiary,* 839 F.2d 1030, 1034 (4th Cir.1988). *See also,* Maryland Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27, § 645A(c). This assertion is based on Trimble's belief that the judge's statement did not accurately reflect the judge's role in the event the jury was unable to agree on a sentence after a reasonable amount of time.

Md.Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27, § 413(k)(2) states:

> If the jury, within a reasonable time, is not able to agree as to whether a sentence of death shall be imposed, the court may not impose a sentence of death.

If a death sentence may not be imposed, "the court *shall* impose a sentence of life imprisonment" (emphasis added). Md.Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27, § 413(k)(4).

Trimble asserts that the judge's instruction did not make clear that should the jury be unable to agree on a sentence the judge would be required to impose a life sentence because the judge said he had "the authority to dismiss the jury, and impose a sentence of life imprisonment." As such, Trimble states, his waiver of a jury sentencing, without all the relevant facts, could hardly be knowing and intelligent. Therefore, he argues, his death sentence must be vacated. We agree and explain.

Webster's Dictionary lists several definitions of the word "authority." Among them are "right," "power to influence thought and opinion," "power to influence the outward behavior of others," and "convincing force." *Webster's Third New International Dictionary* 146 (3d ed. 1981). "Authority" connotes the power to do something. "Power" is a term defined as "the capability of acting or producing an effect," "influence," or "prerogative," *Id.* at 1778. No-

where in the definitions of "authority" or "power" is the notion of necessity of acting or a mandatory act. The trial judge's statement to Trimble that he had the authority to impose a life sentence, then, was in derogation of the clear mandate of § 413(k)(4) which does require imposition of a life sentence by the judge if the jury is unable to agree on a sentence.

Thus, Trimble argues that his decision to waive a jury for sentencing was not knowing and voluntary because of the judge's misleading instruction. This issue is very similar to one we decided in *Harris v. State*, 295 Md. 329, 455 A.2d 979 (1983), and we therefore deem *Harris* to be controlling.

In *Harris*, the defendant asserted as one of the reasons the court should reverse his conviction after it had imposed the death penalty that the trial judge, when explaining to him his options and the function of the jury, did not tell him that "[i]f the jury, within a reasonable time, is not able to agree as to sentence, the court shall dismiss the jury and impose a sentence of imprisonment for life," the rule as then embodied in Article 27, § 413(k)(2). Since he did not know that fact, Harris did not realize that even one juror voting against the death sentence would leave him with a sentence of life imprisonment. Harris thus argued that since he lacked valuable information, his waiver of a jury sentencing was ineffective because the judge's omission left him unaware of what he was relinquishing. *Id.* at 339, 455 A.2d 979. The Court agreed.

As we have stated, waiver of a jury trial in a sentencing proceeding must be shown to be voluntary and knowing. After being told by the judge that the judge "had the authority" to dismiss the jury and impose a life sentence, Trimble may have believed that he had nothing to lose by electing to be sentenced by the court because he could be sentenced to death by either the jury or by the judge, even if the jury were hung on the issue of sentence. Had he been properly instructed that the judge was *required* to impose a life sentence if the jury could not decide on a sentence within a reasonable time, he may well have taken

his chances with the lay persons of the jury in hope that at least one would not vote to sentence him to death. As we said in *Harris:*

It is one thing to be told that the jury would have to be unanimous before imposing death or life imprisonment, but quite another to not being made aware that if, after a reasonable time, the jury is unable to agree, the court shall dismiss the jury and impose a life sentence. It is not difficult to see how this additional information may very well be significant to one convicted of first degree murder and facing a possible sentence of death. *Id.* at 339–40, 455 A.2d 979.

■ The State argues that Trimble waived the right to raise this issue before us because he did not raise it on direct review. We disagree. An interpretation of § 645A(c) reveals that it is not necessarily true that every time an issue is not raised on direct appeal it is waived. Subsection (c) states that "an allegation of error shall be deemed waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation" in a prior proceeding. The second paragraph of subsection (c) reveals that "[w]hen an allegation of error could have been made by a petitioner ... there shall be a *rebuttable* presumption that said petitioner *intelligently and knowingly* failed to make such allegation" (emphasis added). As we stated in *Curtis v. State,* 284 Md. at 139, 395 A.2d 464, the "test for 'waiver' which the Legislature contemplated was clearly the 'intelligent and knowing' failure to raise, not the failure of counsel or an unknowing petitioner to raise an issue." In other words, the standard is "whether [the petitioner] was previously 'aware of and understood the possible defense'" *Id.* at 140, 395 A.2d 464, quoting *Jourdan v. State,* 275 Md. 495, 507, 341 A.2d 388 (1975). It is unclear from the record whether Trimble understood the possible defense before conferring with his attorney for this proceeding.

We also note that

failure of counsel to raise certain types of issues on appeal, whether by inadvertence or deliberate decision, would not necessarily preclude their consideration in a subsequent proceeding. Such issues include rights which cannot be waived absent intentional and knowing action by the defendant, rights which can only be waived personally by a defendant, matters which are deemed more appropriate for resolution in proceedings subsequent to an appeal such as proceedings under the Post Conviction Procedure Act, Code (1957, 1982 Repl.Vol.), Art. 27, § 645A *et seq.*, or issues where there exist special circumstances excusing waiver (footnote omitted).

*Foster, Evans and Huffington v. State*, 305 Md. 306, 315, 503 A.2d 1326, *cert. denied*, 478 U.S. 1010, 1023, 106 S.Ct. 3310, 3315, 92 L.Ed.2d 723, 745 (1986). We went further to recognize "that in a capital case the Court is less strict about the failure to preserve issues for review, and the Court may under appropriate circumstances exercise its discretion to decide such issues." *Id.* 305 Md. at 316, 503 A.2d 1326, citing *Johnson v. State*, 292 Md. 405, 412, n. 3, 439 A.2d 542 (1982). *See also, Bartholomey v. State*, 260 Md. 504, 513, 273 A.2d 164 (1971), *vacated in part and remanded on other grounds*, 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972), *reh'g denied*, 409 U.S. 901, 93 S.Ct. 180, 34 L.Ed.2d 162 (1972).

Thus, although not raised on direct appeal, we decide Trimble's assignment of error here. We hold his decision to waive sentencing by a jury was not knowing within the requirements of law. Therefore, the sentence of death must be vacated.

 Generally, upon vacating a death sentence, we remand the case to the trial court for a new capital sentencing proceeding. In this case, however, we note that a new sentence of death is precluded by Md.Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27, § 412(f) which states in pertinent part:

(f) *Penalty for defendants less than 18 years old or mentally retarded defendants.*—(1) If a person found guilty of murder in the first degree was, at the time the murder was committed, less than 18 years old ..., the person shall be sentenced to imprisonment for life or imprisonment for life without the possibility of parole and may not be sentenced to death.

Effective July 1, 1987, the statute prescribing the punishment for murder was changed to preclude the death penalty for those under 18 at the time the crime was committed. That statute, § 412, was further refined in 1989. Section 2, ch. 677, Acts of 1989 provides that "the provisions of this Act apply retrospectively to individuals who are awaiting trial or sentencing by the courts of this State on July 1, 1989 and prospectively to any individual sentenced on or after July 1, 1989."

In construing legislative mandates it is clear that the real and actual intent of the legislature is the foremost consideration and that if the words of the legislature are unambiguous, they are to be accorded their natural connotation. *See, State v. Kennedy,* 320 Md. 749, 580 A.2d 193 (1990) and cases cited therein. It is obvious to us that the legislature was clear and unambiguous when it decreed that the provisions of § 412 apply prospectively to any individual sentenced on or after July 1, 1989.

As we vacate Trimble's death sentence, a new sentencing proceeding is required; thus, he will become an individual sentenced after July 1, 1989. Therefore, under § 412(f) Trimble cannot again be sentenced to death because he was under the age of 18 when he committed the murder.

JUDGMENT AFFIRMED EXCEPT AS TO SENTENCE; SENTENCE OF DEATH VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR IMPOSITION OF A LIFE SENTENCE IN ACCORDANCE WITH THIS OPINION.

MURPHY, C.J., concurs in the result.