No. 87–5222. WILLIAMS *v.* LYNAUGH, DIRECTOR, TEXAS DEPARTMENT OF CORRECTIONS. C. A. 5th Cir. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231–241 (1976) (MARSHALL, J., dissenting), I would grant the petition for writ of certiorari. Even if I did not hold this view, I would grant the petition in order to resolve the question whether the State may, consistent with the Eighth and Fourteenth Amend-

ments, introduce evidence of unadjudicated criminal conduct at the punishment phase of a capital trial. This claim presents a serious constitutional issue that has provoked a number of conflicting court decisions nationwide. The petition also presents a second question worthy of our review, namely, whether a State violates the Equal Protection Clause when it permits the sentencer to consider evidence of unadjudicated offenses in capital cases but not in noncapital cases.

## I

Petitioner James Williams was sentenced to death under a Texas capital punishment statute that requires the jury to determine beyond a reasonable doubt that the defendant, if permitted to live, would commit criminal acts of violence that would constitute a continuing threat to society. See Tex. Crim. Proc. Code. Ann., Art. 37.071(b)(2) (Vernon Supp. 1986–1987). To prove this circumstance, the State relied in large part on eyewitness testimony that petitioner had participated in a restaurant robbery 10 days before the murder. Petitioner never had been charged with, much less convicted of, this crime. The court did not caution the jury that it had to find petitioner had committed the crime by any particular standard of proof before considering the evidence in its calculation of future dangerousness. Indeed, the jury was encouraged not to do so by the State's attorney, who stated:

> "You don't have to go back there and find him guilty of [the robbery]. You don't have to write a verdict for that. This is here to let you see what he did ten days prior." Pet. for Cert. 4.

In his federal petition for a writ of habeas corpus, petitioner argued that Texas' sentencing scheme violates the Eighth and Fourteenth Amendments because it permits the introduction of evidence of unadjudicated criminal conduct at the sentencing hearing of a capital trial. Williams also contended, in the alternative, that Texas' sentencing scheme violates the Equal Protection Clause of the Fourteenth Amendment because the State permits the introduction of unadjudicated offenses in capital-sentencing trials while forbidding the use of such evidence in noncapital-sentencing proceedings, see *Jones* v. *State*, 479 S. W. 2d 307 (Tex. Crim. App. 1972). The Court of Appeals for the Fifth Circuit rejected both claims. 814 F. 2d 205 (1987).

## II

Whether a State may introduce evidence of unadjudicated offenses in the sentencing phase of a capital trial is a vexing question with respect to which the state courts are in considerable need of guidance. The courts that have considered the question have provided inconsistent responses. A number have held that a State may not introduce evidence of unadjudicated crimes to prove a statutory aggravating factor at the sentencing phase of a capital trial. See *State* v. *Bobo,* 727 S. W. 2d 945, 952–953 (Tenn.), cert. denied, *ante,* p. 872; *State* v. *Bartholomew,* 101 Wash. 2d 631, 640–642, 683 P. 2d 1079, 1085–1086 (1984) (en banc); *State* v. *McCormick,* 272 Ind. 272, 277–278, 397 N. E. 2d 276, 280 (1979); *Cook* v. *State,* 369 So. 2d 1251, 1257 (Ala. 1978). Other state courts have held that although evidence of unadjudicated crimes is inadmissible to prove that the criminal act took place, such evidence is admissible to show "defendant's characteristics," *State* v. *Skipper,* 285 S. C. 42, 48–49, 328 S. E. 2d 58, 62 (1985), rev'd on other grounds, 476 U. S. 1 (1986), or "'other matter[s] which the court deems relevant to sentence.'" *Crump* v. *State,* 102 Nev. 158, 161, 716 P. 2d 1387, 1388–1389 (quoting Nev. Rev. Stat. § 175.552 (1985)), cert. denied 479 U. S. 870 (1986). At least one state court has indicated that unadjudicated-crimes evidence may be admitted, but only if the court instructs the jury that it must find beyond a reasonable doubt that the defendant committed the crime before it can use the evidence in its sentencing determinations. See *People* v. *Easley,* 187 Cal. Rptr. 745, 758–761, 654 P. 2d 1272, 1286–1288 (1982), vacated on other grounds, 34 Cal. 3d 858, 671 P. 2d 813 (1983). Still others, including Texas, have found that that the admission of such evidence is not of constitutional significance and have required merely that the evidence be relevant. See *Milton* v. *State,* 599 S. W. 2d 824, 827 (Tex. Crim. App. 1980) (en banc), cert. denied, 451 U. S. 1031 (1981); *Fair* v. *State,* 245 Ga. 868, 870–871, 268 S. E. 2d 316, 319–320, cert. denied, 449 U. S. 986 (1980).

As Texas' prohibition against the use of unadjudicated offenses in noncapital cases suggests, the use of such evidence at sentencing is at tension with the fundamental principle that a person not be punished for a crime that the State has not shown he committed. In the context of capital sentencing, this tension becomes irreconcilable. This Court has repeatedly stressed that because the death penalty is qualitatively different from any other crimi-

nal punishment, "there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.). In my view, imposition of the death penalty in reliance on mere allegations of criminal behavior fails to comport with the constitutional requirement of reliability. A conviction signals that the underlying criminal behavior has been proved beyond a reasonable doubt to the satisfaction of an unbiased jury in conformance with constitutional safeguards. The testimony on which the State relied in this case, by contrast, carries with it no similar indicia of reliability.

It could be argued that the reliability problem can be mitigated by instructing the jury to consider evidence of unadjudicated offenses only if it finds beyond a reasonable doubt that the defendant committed the crime. This approach concedes that the Constitution requires a jury to determine that the alleged criminal conduct actually occurred. Once this concession is made, however, the intractability of such an approach becomes apparent. For if a defendant has a right to have a jury find that he committed a crime before it uses evidence of that crime to sentence him to die, he has a right that the jury that makes the determination be impartial. A jury that already has concluded unanimously that the defendant is a first-degree murderer cannot plausibly be expected to evaluate charges of other criminal conduct without bias and prejudice. Several state courts have concluded for this reason that introduction of evidence of unadjudicated offenses violates a defendant's due process right to an impartial jury. See *State* v. *Bobo, supra,* at 952–953; *State* v. *Bartholomew, supra,* at 640–642, 683 P. 2d, at 1085–1086; *State* v. *McCormick, supra; Cook* v. *State, supra,* at 1257.

In *Williams* v. *New York,* 337 U. S. 241 (1949), this Court let stand the imposition of the death penalty by a judge who had received evidence of unadjudicated offenses, reasoning that death is no different from any other punishment. See *id.,* at 251–252. In *Gardner* v. *Florida,* 430 U. S. 349, 357–358 (1977) (opinion of STEVENS, J.), however, it was recognized that the view expressed in *Williams* no longer prevails, and that the death penalty is qualitatively different from other punishments. Since then, we have invalidated a number of procedural rules that called into question the reliability of the sentencing determination. See *Beck* v. *Ala-*

*bama*, 447 U. S. 625, 638 (1980) (citing cases). In my view, the Court's jurisprudence in this area raises serious doubts as to whether a State may ever, consistent with the Eighth and Fourteenth Amendments, introduce evidence of unadjudicated crimes at the sentencing phase of a capital trial. In any event, it appears beyond dispute that the issue is both significant and recurring, and one on which the lower courts are in disarray. I would grant the petition for certiorari to resolve this pressing question.

## III

The State's use of evidence of unadjudicated offenses is particularly disturbing because Texas generally forbids the use of such evidence in sentencing determinations for *non*capital crimes, reasoning that the evidence poses too great a danger of undue prejudice and confusion. See *Jones* v. *State*, 479 S. W. 2d 307 (Tex. Crim. App. 1972). Williams argues that Texas' practice of not adhering to this practice during capital sentencing violates the Equal Protection Clause. The Court of Appeals rejected this claim, reasoning that "[g]iven the finality of a death sentence, Texas has a strong interest in ensuring that all relevant evidence concerning the capital defendant is placed before the jury so that it can consider the evidence when answering the special issues." 814 F. 2d, at 208. I can think of no constitutionally legitimate reason why evidence of unadjudicated offenses should be admissible in capital cases but not in other cases. The decision of the Court of Appeals sanctions a *reduction* of procedural protection for the very reason that the defendant's life is at stake. This conclusion cuts sharply against the grain of this Court's capital jurisprudence. Recognizing the greater finality and severity of the death penalty, we have repeatedly scrutinized and enhanced the procedural protections afforded a defendant in a capital-sentencing proceeding. See *Eddings* v. *Oklahoma*, 455 U. S. 104, 117–118 (1982) (O'CONNOR, J., concurring) ("Because sentences of death are 'qualitatively different' from prison sentences, this Court has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake") (citation omitted); *Ake* v. *Oklahoma*, 470 U. S. 68, 87 (1985) (Burger, C. J., concurring in judgment) ("In capital cases the finality of the sentence imposed warrants protections that may or may not be required in other cases").

Texas' sentencing system adopts precisely the converse reasoning; it singles out capital defendants for less procedural protection. This diminution of safeguards for capital defendants only is both perverse and at odds with the decisions of this Court. I therefore would grant the petition for certiorari in order to consider Williams' equal protection claim should this Court reject his more sweeping attack on Texas' sentencing procedures.