Revised April 12, 1999

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-41332

RAYMOND JAMES JONES,

Petitioner-Appellant,

versus

GARY JOHNSON, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

March 29, 1999

Before POLITZ, JOLLY, and DeMOSS, Circuit Judges.

POLITZ, Circuit Judge:

Raymond James Jones appeals the district court's denial of his 28 U.S.C.

§ 2254 petition challenging his conviction and death sentence for the murder of Su

Van Dang. For the reasons assigned, we affirm.

**BACKGROUND**

On June 18, 1988, the police of Port Arthur, Texas discovered the soot covered body of Su Van Dang, who had died of multiple stab wounds to the chest and body. After learning that the victim had been playing dominoes with a group of people the night of his murder, one of the victim's neighbors identified Raymond Jones as one of the people who had been with the victim the night he was murdered. Jones was arrested based on a warrant issued by a justice of the peace.[1]

After giving the **Miranda** warnings, one of the police officers asked Jones if he knew what his arrest was about, to which he responded, "some Vietnamese, huh?" Jones then said: "yea, I did it." He then directed the officers to his sisters' house where they recovered a stereo that had been taken from the victim's house the night of the murder. Jones was arraigned within an hour and a half and given a formal advisory of his rights. Two hours after his arrest, he signed a typewritten confession, the first of two statements admitted at trial; the second was made the next afternoon.[2]

---

[1]This warrant was found to be invalid for failure of probable cause. **Jones v. State**, 833 S.W.2d 118 (Tex.Crim.App. 1992).

[2]The Texas Court of Criminal Appeals found the arrest to be illegal but concluded that the two written statements made subsequent thereto were sufficiently attenuated to permit their use at trial. It also found that because Jones failed to object to the admission of the stereo at trial, any objection to its admission had been waived. As to Jones' oral statements at the time of arrest, the court found that the taint of the illegal arrest was not attenuated, but that the admission of these statements was harmless error. **Jones v. State**, 833 S.W.2d 118 (Tex. Crim. App. 1992).

Jones' written confessions relate that he accompanied Su Dang to his house after the dominoes game. Upon seeing a stereo that he wanted in the corner of the victim's living room, Jones began to beat and stab the victim. Su Dang pleaded for a bath and Jones tried to drown him in his bathtub. Jones then began searching for money and, finding none, put the victim in a closet, tied him with an electrical cord, poured kerosene on him and on the floor around him and set it afire. Jones then left the house.

Jones was charged and tried for capital murder. The jury found him guilty of the capital offense and a death sentence was imposed. The sentence was affirmed by the Court of Criminal Appeals of Texas[3]; a writ of *certiorari* was denied by the Supreme Court.[4]

Jones then filed the instant petition under 28 U.S.C. § 2254. In his petition, Jones contended that the trial court erred in not instructing the jury on the lesser included offense of murder, and in not giving a **Penry** instruction which would have allowed the jury to give mitigating effect to his evidence of mental retardation. Jones further alleged that he received ineffective assistance of counsel; that his confession to the murder was not voluntary; that potential jurors were

[3]**Jones**.

[4]507 U.S. 921 (1993).

excluded in violation of **Batson v. Kentucky**[5]; that he was entitled to an evidentiary hearing under **Townsend v. Sain**[6]; and that he was entitled to discovery. The district court referred the case to the magistrate judge who returned a Report and Recommendation that the writ be denied. The district court adopted this report as its final ruling. Jones filed a notice of appeal contemporaneously with his application for a Certificate of Probable Cause to appeal the district court's finding. The district court denied his application for CPC; we subsequently granted it.

**ANALYSIS**

1.    *The Lesser Included Offense Claim*

Jones contends that the trial court erred in not including an instruction on the lesser included offense of murder because there was evidence that the murder was not motivated by the theft of the victim's stereo. He contends that his statements that he killed the victim because of his homosexual advances, and his statements indicating that he killed the victim out of self-defense are proof that other circumstances motivated the murder. He also relies on testimony of a witness who said that he saw Jones leave the house empty handed after the murder as further evidence that the theft was an afterthought. He maintains that because theft as an

---

[5]476 U.S. 79 (1986).

[6]372 U.S. 293 (1963).

4

afterthought to murder does not constitute capital murder,[7] the jury should have been given an instruction on the lesser included offense.

We do not agree. A capital defendant is constitutionally entitled to instructions on a lesser-included offense only if he has demonstrated that the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.[8] Jones' contentions that he killed the victim because of his homosexual advances are contradicted by the unequivocal language in his own confession that the theft motivated the murder.[9] Because the jury could not have rationally acquitted Jones of the underlying felony – the essential difference between capital murder and murder – the jury's verdict necessarily was returned on the question of Jones' intent to kill.[10]

Jones further contends that his mental capabilities lowered his culpable

---

[7]**Cordova v. Lynaugh**, 838 F.2d 764 (5th Cir. 1988).

[8]**Hopper v. Evans**, 456 U.S. 605 (1982); **Cordova**.

[9]In his confession, Jones stated, "I already knew that I did not need to be in this place with this man if he was gay, but I had already seen that in the corner of the living room was a great big radio, stereo, cassette. When I saw this stereo I knew that I wanted this stereo, but I also knew that this man knew who I was and there was no way that I could get this radio with out him knowing it was me."

[10]*See, e.g.,* **Livingston v. Johnson**, 107 F.3d 297 (5th Cir.), *cert. denied,* 118 S.Ct. 204 (1997). (holding that a felony murder charge was not necessary where defendant did not dispute the underlying robbery and the jury had opportunity to decide the issue of defendant's intent to kill on the charges of capital murder and murder).

mental state. He points to the capital murder statute, which provides that a murder committed in the course of a robbery must be done intentionally, and the murder statute, which provides that the murder be done intentionally *or* knowingly.[11] Jones contends that because he fit the profile of a "mentally deficient disorganized offender," the jury could have believed that he lacked the mental capacity to form the conscious objective or desire required of an intentional crime, and thus he killed knowingly but not intentionally. Because of this, his contention continues, he was necessarily entitled to an instruction on the lesser included offense of murder, as a murder committed knowingly in the course of a robbery lacks the higher level of intent and cannot be capital murder.

This contention is without merit. The evidence of record simply does not support a rational finding that Jones acted knowingly but not intentionally. Jones stated that he consciously decided to kill the victim so that he would not be recognized as the thief of the victim's stereo. The brutal, drawn-out nature of the

---

[11]Section 19.02 of the Texas Penal Code provides that murder occurs when a person "intentionally or knowingly causes the death of an individual"; Section 19.03 provides that a murder is capital murder if "the person intentionally commits the murder in the course of committing or attempting to commit kipnapping, burglary, robbery . . . ." Section 6.03 of the Texas Penal Code provides that a person acts "intentionally" "when it is his conscious objective or desire to engage in the conduct or cause the result." Under the same provision, a person acts "knowingly" "when he is aware that his conduct is reasonably certain to cause the result."

murder is also evidence of the intentional nature of this crime.[12]   Further, the jury

had the opportunity to distinguish between knowing and intentional conduct during

the  sentencing.  The first punishment phase issue required the jury to find, beyond

a reasonable doubt, that the conduct of the defendant that caused the death of the

deceased was committed deliberately and with reasonable expectation that death

would result.  The judge defined "deliberate" as "something more than intentional"

and as a "conscious decision [embracing] more than a will to engage in conduct."

Any suggestion that the jury rationally could have found Jones guilty of killing

knowingly but not intentionally is foreclosed by the affirmative response to the

greater mental element during the sentencing phase.

2.    *The* **Penry** *Claim*

Jones contends that the jury was precluded from making a reasoned moral

response to the mitigating evidence of mental retardation.[13]  To support his **Penry**

---

[12]**Felder v. State**, 848 S.W.2d 85 (Tex. Crim. App. 1992) (holding that evidence of intent was sufficient for a capital murder conviction under Texas statute where defendant had stabbed victim numerous times, tried to smother and then stabbed another victim, carried a gun with him in case anyone tried to stop the robbery, and was heard commenting that "dead men tell no lies"); **Lincecum v. Collins**, 958 F.2d 1271 (5th Cir. 1992) (holding that defendant was not entitled to lesser included offense instruction where evidence of his intent to kill was overwhelming; defendant had choked victim for approximately three minutes after she was dead and left her body in an automobile trunk when temperature exceeded 100 degrees).

[13]**Penry v. Lynaugh**, 492 U.S. 302 (1989).

claim, Jones relies on the testimony of Dr. Jerry Landrum, a psychologist, who testified that he found Jones "within the borderline mentally retarded range of intellectual abilities" through testing and conversation with him, and that Jones was "significantly limited" in his understanding of surrounding events. Jones also relies on testimony by the state psychiatrist that the IQ test scores overestimated Jones' alertness and understanding of what went on around him. Jones also contends that the court not only failed to give a **Penry** instruction, it expressly instructed the jury away from consideration of mitigating evidence by not allowing the jury to impose a sentence less than death based on the mitigating value of the evidence beyond its relevance to the special issues submitted.

We are not persuaded that a special instruction regarding Jones' mental retardation was required. We have noted that to have a valid **Penry** claim, the evidence must show "(1) a uniquely severe handicap with which the defendant was burdened through no fault of his own, . . . and (2) that the criminal act was attributable to this severe permanent condition."[14] Jones has failed to show that his mental abilities were so limited as to constitute a uniquely severe handicap. Only one IQ test was performed by a non-testifying expert, and the results placed Jones

---

[14]**Harris v. Johnson**, 81 F.3d 535, 539 (5th Cir.) *cert. denied*, 517 U.S. 1227 (1996) (internal quotations and citations omitted).

in the dull normal range of intelligence.[15] Although Dr. Landrum, Jones' defense witness, initially testified that Jones' IQ was between 73 and 77, and thus within the borderline mentally retarded range, he did not perform an IQ test. Even Dr. Landrum's low figures, however, fall within the borderline area between mild retardation (below 70) and dull normal intelligence. We have found that a showing of borderline or below average intelligence does not constitute a showing of mental retardation.[16] Even assuming *arguendo* that Jones' limited abilities constitute a severe handicap, Jones has not presented any evidence showing the requisite nexus between his handicap and the criminal act.[17] Therefore, Jones' **Penry** claim must also fail.

Nor do we find merit in Jones' contention that the instructions given did not properly empower the jury to consider a sentence less than death based on the mitigating value of evidence beyond its relevance to the special issues submitted. As discussed above, Jones presented no evidence of mental retardation and thus his evidence of mental retardation was not mitigating evidence outside the scope of the

---

[15]Jones had a verbal IQ of 77, a performance IQ of 85, and a full scale IQ of 80.

[16]**Andrews v. Collins**, 21 F.3d 612 (5th Cir.1994) (holding that defendant with IQ between 70 and 80 fell within borderline range of intelligence and thus failed to show mental retardation under **Penry**).

[17]**Harris** (holding that petitioner's **Penry** claim failed because petitioner failed to present any evidence of a nexus between his alleged mental disabilities and the criminal act).

special issues.[18]  Further, in addition to the three special issues presented,[19] the jury was given an additional instruction in which it was told that it could consider "any evidence, which . . . mitigates against an answer of "yes" to each issue, including aspects of the Defendant's character or record, and any of the circumstances of the commission of this offense which [the jury members] find to be mitigating."  The jury was directed to consider all mitigating evidence, and thus Jones' claim must fail.

3.    *The Ineffective Assistance Claim*

Jones contends that he was ineffectively assisted by his counsel both during trial and state *habeas* proceedings.  Specifically, he contends that his trial counsel gave his case minimal attention, failed to investigate adequately, spent little time with him, and failed to procure discovery or a hearing to develop mitigating claims. He further maintains that his state *habeas* counsel rendered ineffective assistance

---

[18]**Andrews v. Collins**, 21 F.3d 612 (5th Cir. 1994).

[19]Jones was sentenced under former article 37.071 of the Texas Code of Criminal Procedure, which asked the jury:
    1.    whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with reasonable expectation that the death of the deceased would result;
    2.    whether there is a possibility that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
    3.    if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

10

by failing to raise the issue of his trial counsel's ineffectiveness.

Jones did not present this claim for review on either direct appeal or during the state *habeas* proceedings, and this unexhausted claim is therefore procedurally barred.[20] Further, Jones' claim would be dismissed as abuse of writ under state law if presented in a second state petition and is likewise barred from our consideration.[21] Jones must therefore assert cause and prejudice for not bringing these claims in his first state application or be procedurally barred.[22] Jones contends that his state *habeas* counsel's failure to present his ineffective assistance claim during state *habeas* proceedings constitutes cause sufficient to overcome procedural default. The law is well-established, however, that such error committed in a post-conviction application, where there is no constitutional right

---

[20]**Keeney v. Tamayo-Reyes**, 504 U.S. 1 (1992).

[21]**Gray v. Netherland**, 116 S.Ct. 2074 (1996). Under Tex. Code Crim. P. art. 11.071 § 5, a capital defendant may not file multiple applications for review unless he can show that (1) the factual or legal basis of the claim was unavailable on the date of the previous application or the last date for timely filing of an application, or (2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror would have answered in the state's favor to one or more of the special issues. Because Jones' ineffective assistance of counsel claim does not fall within either of these exceptions, any application filed would be dismissed as an abuse of writ.

[22]**Keeney**; **Coleman v. Thompson**, 501 U.S. 722 (1991)**.**

to counsel, cannot constitute cause.[23]  Jones' contention is thus without merit.

Even if no procedural bars existed, Jones would not be able to satisfy the demanding burden of **Strickland v. Washington**[24] of showing that his trial counsel's performance fell below the range of reasonable professional assistance, or that there is a reasonable probability that counsel's performance prejudiced the outcome. Neither the failure to present or develop mitigating evidence nor the failure to give a **Penry** instruction in itself leads to an ineffective assistance claim.[25]  Because the evidence showed that Jones' retardation, if any, was borderline, the further development of such evidence may have hurt, rather than helped, Jones.[26]  Given Jones' confessions, the brutal and lengthy nature of the murder, and the lack of proffered evidence showing mitigation, Jones cannot reach the prejudice level

---

[23]**Coleman**; **Callins v. Johnson**, 89 F.3d 210 (5th Cir.), *cert. denied*, 117 S.Ct. 530 (1996); **Irving v. Hargett**, 59 F.3d 23 (5th Cir. 1995), *cert. denied*, 516 U.S. 1120 (1996).

[24]466 U.S. 668 (1984).

[25]**West v. Johnson**, 92 F.3d 1385 (5th Cir. 1996), *cert. denied,* 117 S.Ct. 1847 (1997) (holding that counsel's failure to present mitigating evidence may have been for sound strategic reasons, and thus court could not speculate that defendant was unconstitutionally impaired); **Duhamel v. Collins**, 955 F.2d 962 (5th Cir. 1992) (holding that there was not a reasonable probability that a jury would not have sentenced defendant to death had there been a **Penry** instruction).

[26]**Motley v. Collins**, 21 F.3d 612 (5th Cir. 1994).

required by **Strickland**.[27]

4. *The Fourth Amendment Claims*

Jones contends that because his arrest was found to be illegal,[28] his statements resulting from this arrest should be suppressed, as the connection between the arrest and the statement was not so attenuated as to dissipate the taint. Specifically, he maintains that the statements made right after the arrest and his first written statement made within two hours of the illegal arrest should be suppressed as "poisonous fruit."[29] He further contends that his waiver of his **Miranda** rights was not voluntary, because his mental deficiencies, coupled with the coercive circumstances surrounding his illegal arrest, rendered him incapable of understanding the **Miranda** warnings.

The state provided an opportunity for full and fair litigation of Jones' fourth amendment claim prior to trial; we cannot reexamine this claim on federal *habeas* review.[30] Further, we must reject Jones' contention that his confession was not voluntary, as he has presented no evidence of coercive tactics by the police or

---

[27]**Duhamel**.

[28]**Jones v. State**, 833 S.W.2d 118 (Tex. Crim. App. 1992).

[29]**Wong Sun v. United States**, 371 U.S. 471 (1963).

[30]**Stone v. Powell**, 428 U.S. 465, 494 (1976).

evidence that his confession was not made intelligently because of his limited intellectual capacities.[31]

5.    *The* **Batson** *Claims*

Jones further contends that the prosecution relied on inherently discriminatory reasons for excluding three veniremen. He contends that the veniremen's statements regarding their stance on the death penalty belie the prosecution's assertion that they were excluded because of their possible reluctance to give the death penalty.

The Texas Court of Criminal Appeals found that Jones' **Batson** challenges were procedurally defaulted under state law because the trial objection did not comport with the complaint on appeal.[32] Because we cannot review federal *habeas* claims that are defaulted under state law,[33] we must decline to consider these claims.

6.    *The Evidentiary Hearing and Discovery Claims*

Finally, Jones contends that under pre-AEDPA law he was entitled to an

_____

[31]*See* **Penry v. Lynaugh**, 832 F.2d 915 (5th Cir. 1987), *rev'd on other grounds*, 492 U.S. 302 (1989) (holding that mental retardation did not render defendant's confession involuntary absent coercive tactics by police).

[32]**Jones**.

[33]**Lambrix v. Singletary**, 520 U.S. 518 (1997).

evidentiary hearing, as he did not receive a full and fair hearing in state court at the time of trial or in collateral proceedings. He contends that the state did not sufficiently consider the facts, as the entire consideration of his state *habeas* petition was less than 72 hours.[34] To support his contention, he relies on **Bracy v. Gramley**,[35] which held that a petitioner is entitled to the procedures necessary to develop allegations, when these allegations suggest a predicate for belief that relief is in order.

Jones' reliance on **Bracy** is misplaced. That case supports the general rule that under pre-AEDPA law, a petitioner is entitled to an evidentiary hearing only if he or she shows that there is a factual dispute which, if resolved in petitioner's favor, would entitle him or her to relief.[36] A review of Jones' brief reveals no such factual dispute. Further, Jones' similar claim that he is entitled to discovery must also fail, as he has not made specific factual allegations showing that he is entitled to discovery.[37]

---

[34]The trial court issued findings and conclusions recommending that relief be denied the same day the petition was filed, and the Texas Court of Criminal Appeals denied relief 48 hours after the trial court.

[35]520 U.S. 899 (1997).

[36]**Harris v. Johnson**, 81 F.3d 535 (5th Cir.), *cert. denied*, 517 U.S. 1227 (1996); **East v. Scott**, 55 F.3d 996 (5th Cir. 1995).

[37]**Harris.**

15

For these reasons, the judgment appealed is AFFIRMED.