HENRY, Chief Judge,
dissenting:
The majority’s opinion is well-reasoned and lucidly states the governing law. I agree with much of its analysis: future dangerousness must be found beyond a reasonable doubt; prior unadjudicated criminal conduct can be relevant evidence; and the presumption of innocence does not bar the introduction of evidence regarding the Chamberino murders. However, in order to conclude that a distinguished jurist has abused his discretion, I must have a firm conviction that the judge was wrong. In this case, such a conviction eludes me, and I therefore respectfully dissent.
I. BACKGROUND
Several legal principles are important in this case and are worth restating. First, “the penalty of death is different in kind from any other punishment.” Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.); see also McCleskey v. Kemp, 481 U.S. 279, 340, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (Brennan, J., dissenting) (“It hardly needs reiteration that this Court has consistently acknowledged the uniqueness of the punishment of death.”). “[T]his qualitative difference ... calls for a greater degree of reliability when the death sentence is imposed.” Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In my view, this heightened reliability requirement means that a trial judge should exercise particular care in assessing claims of unfair prejudice, as the district court did here.
Next, it is important to emphasize that this court reviews the district court’s decision to exclude evidence pursuant to the Federal Death Penalty Act (FDPA) for abuse of discretion. See United States v. Corley, 519 F.3d 716, 726 (7th Cir.2008) (“We will reverse a district court’s determination [of exclusion of evidence] only for an abuse of discretion.”). “A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable.” United States v. Sells, 541 F.3d 1227, 1237 (10th Cir.2008) (quotations omitted), cert. denied — U.S. --■, 129 S.Ct. 1391, 173 L.Ed.2d 642 (2009). Likewise, this court may find an abuse of discretion where a district court “commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling.” Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir.2002) (citations omitted).
When applying an abuse of discretion standard of review, we necessarily recognize that there may be no single right answer to the question at hand, but a range of possible outcomes sustainable on the law and facts. “[W]e will defer to the district court’s judgment so long as it falls within the realm of these rationally available choices.” United States v. McComb, 519 F.3d 1049, 1053 (10th Cir.2007).
*862 Further, it is important to recognize that the admissibility of prior, unadjudicated conduct is an issue as to which the statute specifically gives the trial judge even greater discretion than usual. Evidence may be excluded “if its probative value is outweighed by the danger of unfair prejudice,” 18 U.S.C. § 3593(c), which is distinct from the normal trial standard that requires that it be “substantially outweighed” by the danger of unfair prejudice. Fed.R.Evid. 403. The majority opinion acknowledges as much when it states: “Section 3593(c) provides the district court with greater discretion to exclude unfairly prejudicial or confusing information than the district court has during the guilt phase.” Maj. op. at 854.
The statutory framework and plain language indicates a balance, allowing the evidence to be admitted but giving district courts greater deference to exclude it based on the stated factors. As noted by the Seventh Circuit, although it is constitutionally permissible to admit unadjudicated conduct, “[tjhat does not mean that such conduct may be considered in all cases.” Corley, 519 F.3d at 724; see also United States v. Grande, 353 F.Supp.2d 623, 634 (E.D.Va.2005) (“While unadjudicated conduct may be admissible, it must be carefully monitored to avoid constitutional deficiencies.”).
It is also important to note that the admissibility of unadjudicated conduct during the penalty phase has troubled jurists for some time. See Williams v. Lynaugh, 484 U.S. 935, 937-38, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987) (Marshall, J., dissenting) (“Whether a State may introduce evidence of unadjudicated offenses in the sentencing phase of a capital trial is a vexing question.”); Devier v. Kemp, 484 U.S. 948, 949, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987) (Marshall, J., dissenting) (“[T]he admission of evidence of unadjudicated crimes at the sentencing phase impinges on the unique constitutional concern for reliability in capital trials.”); United States v. Green, 372 F.Supp.2d 168, 180 (D.Mass.2005) (“But surely it cannot be said that a prior unadjudicated crime, entirely separate from the charged offense, comes with the substantial procedural safeguards accompanying a prior conviction, or factors intertwined with the trial of the charged offense.”) (emphasis in the original).
II. ANALYSIS
The FDPA explicitly states certain factors for the district court to weigh in determining the admissibility of unadjudicated prior offenses: “[Ijnformation may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.” 18 U.S.C. § 3593(c).
I agree with the majority that Supreme Court precedent instructs that the jury should receive “as much information as possible when it makes the sentencing decision.” Maj. op. at 859 (quoting Gregg, 428 U.S. at 203-04, 96 S.Ct. 2909). There are, however, countervailing considerations, stated in the statute, that the district court reasonably assessed-in particular, concerns about confusion and unfair prejudice. The district court’s fine opinion squarely addressed these concerns, as the statute requires. The district court explained that
the character of the evidence that the United States seeks to introduce at the prospective sentencing phase could have the doubly deleterious effect of inflaming and confusing the jury, thereby creating a substantial risk that the jury could impose a sentence based on, or appears to be based on, emotional consideration rather than instructed reason.
Aplt’s App. at 187 (Dist. Ct.’s Mem. Op. and Order).
*863 It also explained that the danger of unfair prejudice is too great in this case. Id. at 191 (“[T]his case is one in which even the best jury instructions would be insufficient to cure the unfair prejudice to Mr. Lujan if the jury were allowed to consider evidence of his alleged culpability for the Chamberino murders during the penalty phase of this trial.”). Thus, there is more to the district court’s opinion than the presumption of innocence analysis identified by the majority. The district court aptly expressed a valid concern when it wrote “the Court foresees substantial risk that members of the jury may naturally confuse the issue and consider evidence of Mr. Lujan’s alleged culpability for the Chamberino murders as an independent aggravating factor, tending to show that he merits death, rather than as evidence intended to establish the non-statutory aggravating factor of future dangerousness.” Id. at 186.
The majority’s opinion acknowledges the presence of this analysis — but finds that “concern about juror confusion ... [is] overstated,” maj. op. at 860, and that “there is nothing inherently ‘unfair’ with allowing the government some latitude to present the unfavorable aspects of the defendant, so long as that evidence is relevant to a properly identified aggravator and does not involve gratuitous gruesomeness or inflammatory detail beyond what is necessary to reveal to the jury the true nature of what happened.” Id. at 858.
Although the majority’s view is a reasonable one, it is important to note that any discussion about what impact admitting evidence before a jury might have is necessarily going to be a prediction and speculation. Every prosecution, and every jury, is different, and no one can be certain of the precise effect. It seems the majority opinion and the district court both draw plausible conclusions about the possible impact of the evidence. However, it also seems to me that the local district judge has a larger and better “feel of the case,” as well as possessing a knowledge of the community that might inform his discretion.
In my view, the case law invoked by the majority does not establish that exclusion of the evidence “falls [outside] the realm of these rationally available choices.” McComb, 519 F.3d at 1053. The majority’s cases hold that various trial court decisions to admit allegedly prejudicial evidence did not constitute an abuse of discretion. See maj. op. at 859-60 (citing United States v. McVeigh, 153 F.3d 1166, 1216 (10th Cir.1998); Corley, 519 F.3d at 726-27 (7th Cir.2008); and United States v. Sampson, 486 F.3d 13, 43-44 (1st Cir.2007)). But, of course, the mere fact that these cases conclude that the district court did not abuse its discretion in admitting evidence does not mean that discretion is abused when evidence is not admitted.
In addition, I do not share the concern that “reliable, informed decisionmaking” may be jeopardized by the district court’s ruling here. Maj op. at 859. From the parties’ submissions in this appeal it seems that, even without the evidence of the Chamberino murders, the government will be able to introduce ample evidence supporting its claim of Mr. Lujan’s future dangerousness. The presence of that additional evidence, discussed clearly by the district court, also suggests that there was no abuse of discretion here.
Finally, one overriding concern I have with the majority opinion is the difficulty I foresee that district courts will have in the future exercising their discretion to exclude evidence. For example, if the assigned judge, who probably knows more about New Mexico juries than we do, concludes that the Chamberino evidence is so *864 prejudicial that even the best curative instruction will not suffice, and that decision is overturned, I am not sure that evidence of unadjudicated conduct would ever be excluded. And this result would be clearly contrary to the statute.
III. CONCLUSION
In fairness, I cannot say whether, if I were the trial judge, I would have ruled the evidence admissible or inadmissible. That would be a difficult decision. But we are not faced with that decision de novo. We are reviewing an experienced judge’s decision for abuse of discretion in an area, where the statute has expressly granted the court significant discretion, and in an area that has no easy answers. Accordingly, I would defer to his judgment on this matter. I appreciate the fine and thorough work of the panel, but I cannot join its conclusion. When reasonable judges can reasonably disagree, I see no abuse of discretion.