*James Russell Trimble v. State of Maryland*, No. 1834, September Term 2022.  Opinion by Getty, Joseph M., J.

**HEADNOTES:**

**CRIMINAL PROCEDURE – JUVENILE RESTORATION ACT – WEIGHT OF FACTORS**

When considering a motion for a reduction of sentence under the Juvenile Restoration Act, Md. Code (2001, 2018 Repl. Vol., 2022 Supp.), Crim. Proc. Art. § 8-110, a court is not required to weigh any one of the factors enumerated in Section 8-110(d) more heavily than the others.  Rather, when deciding whether to reduce the sentence of an individual who was convicted as a juvenile, a court should conduct a balancing test using the factors outlined in the statute.

**CRIMINAL PROCEDURE – JUVENILE RESTORATION ACT – AGE OF DEFENDANT**

The Juvenile Restoration Act does not require that a defendant's age at the time of the offense be used only as a mitigating factor.  Given the broad discretion afforded to judges in sentencing and the presence of age as a factor to consider under the Act, there is no statutory prohibition on using the defendant's age as a factor that weighs against reducing their sentence.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1834

September Term, 2022

_____

JAMES RUSSELL TRIMBLE

v.

STATE OF MARYLAND

_____

Reed,
Beachley,
Getty, Joseph M.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Getty, J.

_____

Filed: August 1, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case asks us to review a motion for modification of sentence under the Juvenile Restoration Act ("JUVRA"), which allows an individual "convicted as an adult for an offense committed when the individual was a minor" to file a motion to reduce the duration of their sentence if the individual was sentenced before October 1, 2021, and has been imprisoned for at least 20 years for that offense. 2021 Md. Laws ch. 61; Md. Code (2001, 2018 Repl. Vol., 2022 Supp.), Crim. Proc. ("CP") Art. § 8-110.

The Appellant, James Russell Trimble, was convicted and sentenced in 1982 for crimes committed when he was a few months shy of his 18th birthday. In 2022, he filed a Motion for Reduction of Sentence Pursuant to JUVRA in the Circuit Court for Baltimore County, which was ultimately denied.

Trimble presents the following questions on appeal:

1. Did the circuit court misapply [JUVRA] when it denied Mr. Trimble's motion for reduction in sentence based primarily on the severity of the offense without meaningful consideration of Mr. Trimble's demonstrated maturity and rehabilitation?

2. Did the circuit court misapply the first statutory factor, "the individual's age at the time of the offense," when it considered being 17 years and approximately 8 months old at the time of the offense to be an aggravating factor?

3. Did the circuit court fundamentally misunderstand the significance of the decades-old diagnosis of Antisocial Personality Disorder, and erroneously assume that this was permanent and unremitting regardless of the many positive things Mr. Trimble has done since?

For the following reasons, we answer each question in the negative and affirm the circuit court's denial of Trimble's motion for reduction of sentence.

# BACKGROUND

## A. Trimble's Conviction

Trimble was convicted of first-degree murder, first-degree rape, two counts of first-degree sexual offense, two counts of kidnapping, and one count of sexual assault in 1982. In a prior appeal, the Supreme Court of Maryland stated the facts underlying Trimble's convictions as follows:

> On July 3, 1981, Melanie Rae Newsom and the murder victim, Nila Kay Rogers, were invited by a friend from school to ride around in a van with some of his friends. The two women entered the van with the friend, James Hanna. Inside were Trimble, Terry Evans, Joseph Evans and Anthony Kordell. The Evans brothers, Trimble and Kordell had earlier taken various drugs and drunk beer.
>
> After Newsom and Rogers entered the van, Trimble tried to kiss Newsom. She resisted. He screamed and began to tear off her clothing. Rogers tried to stop him, but Trimble punched her and threw her in the back of the van. He then hit Newsom and forced her to commit fellatio. The two women persuaded the men to stop the van. Hanna and Newsom went into a cornfield. Back in the van Trimble and Joseph Evans raped Rogers. As Kordell tried to pull Rogers out of the van, Trimble repeatedly struck her with a baseball bat. Trimble then dragged her into the cornfield and slit her throat from ear to ear. He left her body in the cornfield where she was later pronounced dead. The cause of death was listed as severe head injuries from a blunt object.
>
> At trial, Trimble offered insanity as his only defense. A state's expert testified that Trimble suffered from antisocial personality and a history of substance abuse but that Trimble was not insane because he did not lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law under the then prevailing insanity standard of Maryland Code (1982) § 12–107 of the Health–General Article. Another state expert concurred. The first expert further testified that Trimble had a below normal I.Q. of 64 but that that factor did not impair his sanity. The only defense witness testified that Trimble's afflictions caused him to lack substantial capacity to conform his conduct to the law, but the doctor declined to state that conclusion with a reasonable degree of medical certainty or probability.

2

The jury rejected Trimble's insanity defense and found him guilty. Trimble waived his right to be sentenced by a jury and was sentenced to death by the trial judge.

*Trimble v. State*, 321 Md. 248, 253–54 (1990) (footnote omitted).

The Supreme Court of Maryland upheld his conviction and sentence on direct appeal, *Trimble v. State*, 300 Md. 387 (1984), but later vacated his death sentence after concluding he was improperly advised of his right to be sentenced by a jury. *Trimble*, 321 Md. at 264. On remand, Trimble was resentenced to a consecutive life sentence that was upheld on appeal. *Trimble v. State*, 90 Md. App. 705 (1992). At the time of the offense, Trimble was approximately 17 years and 8 months old.

### B. JUVRA Motion for Sentence Reduction

Trimble filed a motion for a reduction of sentence under JUVRA on February 8, 2022.[1] The circuit court held a hearing on the motion on October 27, 2022. Trimble presented evidence of a 2020 psychological evaluation and testimony from a child forensic psychiatry expert that explained antisocial personality disorder ("ASPD"), a diagnosis Trimble had received when he was originally sentenced. Trimble also presented evidence that, while in prison, he received his high school equivalency diploma and a bachelor's degree, worked in the prison library and as a tutor, and had not received an infraction in 20 years.

---

[1] Trimble originally filed a Motion to Correct Illegal Sentence under Maryland Rule 4-345(a) and *Carter v. State*, 461 Md. 295 (2018), in late 2019. The circuit court held a hearing on this motion and took it under advisement. After JUVRA went into effect, Trimble moved to withdraw his Motion to Correct Illegal Sentence and pursued the JUVRA motion at issue here. The circuit court reserved on the motion to withdraw.

The circuit court denied Trimble's motion for sentence reduction on November 23, 2022, by written opinion as required by CP Section 8-110(e). The court considered all of the evidence presented and assessed each factor required by Section 8-110(d) before concluding that Trimble would present a substantial risk to the public if released and that reducing his sentence would not serve the interests of justice.

Trimble timely appealed the denial to this Court. Further details of the hearing and court's order will be provided as needed.

## DISCUSSION

In 2021, the General Assembly passed JUVRA in response to recent decisions by the United States Supreme Court concerning the incarceration of juveniles who commit crimes. In *Graham v. Florida*, the U.S. Supreme Court held that a sentence of life without parole for nonhomicide crimes was unconstitutional for juvenile offenders. 560 U.S. 48, 82 (2010). In *Miller v. Alabama*, the Court held that a mandatory life sentence without parole was unconstitutional for juvenile offenders. 567 U.S. 460, 465 (2012). The U.S. Supreme Court extended *Miller*'s holding in *Montgomery v. Louisiana*, concluding that *Miller* applied retroactively and allowing states to remedy now-unconstitutional sentences by offering the possibility of parole to people sentenced to life without parole as juveniles. *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016).

In response to these federal Supreme Court decisions, Senator Chris West introduced Maryland's JUVRA legislation (Senate Bill 494, 2021 Session) and submitted written testimony stating that the bill

4

will provide an opportunity for people who have committed crimes when they were 17 years old or younger and who have served most of their lives behind bars to appear before the sentencing court and ask the court to consider whether they have so reformed their lives that they should be released from jail because their continued incarceration is no longer necessary for the protection of the public. People can change. Redemption is possible. When that happens, as a society we should rejoice. Keeping someone in prison who committed a youthful crime and who has spent decades in jail but has transformed [their] life and is no longer a threat to society is hard to defend.

Senator Chris West, *RE: S.B. 494 – Juveniles Convicted as Adults – Sentencing – Limitations and Reduction (Juvenile Restoration Act)*, Hearing on Senate Bill 494 Before the Jud. Proc. Comm. of the Senate, 2021 Leg., 442d Sess. (Md. 2021) (written testimony of Senator Chris West) (hereinafter "Senator West Testimony").

As the Maryland Supreme Court has explained, JUVRA brought Maryland into compliance with these federal cases by "ma[king] three significant changes to Maryland's sentencing practices for juvenile offenders convicted as adults." *Malvo v. State*, 481 Md. 72, 85 (2022). First, JUVRA "gave sentencing courts discretion to impose sentences less than the minimum required by law." *Id.* Second, it prospectively banned sentences of life without the possibility of parole. *Id.* Third, JUVRA "authorized offenders sentenced before October 1, 2021 who have spent more than 20 years in prison to file a motion to reduce their remaining sentence." *Id.* Only the final provision authorizing a motion to reduce a sentence is relevant in this case.

CP Section 8-110(c) allows a court to "reduce the duration of a sentence imposed on an individual for an offense committed when the individual was a minor," provided that the court determine that "the individual is not a danger to the public" and "the interests of

justice will be better served by a reduced sentence." CP Section 8-110(d) requires a circuit court to consider the following factors when ruling on a JUVRA motion to reduce a sentence:

(1) the individual's age at the time of the offense;
(2) the nature of the offense and the history and characteristics of the individual;
(3) whether the individual has substantially complied with the rules of the institution in which the individual has been confined;
(4) whether the individual has completed an educational, vocational, or other program;
(5) whether the individual has demonstrated maturity, rehabilitation, and fitness to reenter society sufficient to justify a sentence reduction;
(6) any statement offered by a victim or a victim's representative;
(7) any report of a physical, mental, or behavioral examination of the individual conducted by a health professional;
(8) the individual's family and community circumstances at the time of the offense, including any history of trauma, abuse, or involvement in the child welfare system;
(9) the extent of the individual's role in the offense and whether and to what extent an adult was involved in the offense;
(10) the diminished culpability of a juvenile as compared to an adult, including an inability to fully appreciate risks and consequences; and
(11) any other factor the court deems relevant.

"Under JUVRA, the decision to grant or deny a motion for reduction of sentence under CP [Section] 8-110 generally rests in the discretion of the circuit court upon consideration of the required factors." *Sexton v. State*, 258 Md. App. 525, 541 (2023). The circuit court abuses its discretion when it applies the incorrect legal standards. *Id.* at 541–42. "Whether the circuit court properly construed and applied CP [Section] 8-110 is a question of law that we review *de novo*." *Id.* at 542. Thus, under *Sexton*, appellate review of a grant or denial of a Section 8-110 motion for sentence reduction is based upon proper application of the factors set forth in Section 8-110(d).

6

*A. Weight of the CP Section 8-110 Factors*

Trimble contends that the circuit court placed too much emphasis on the severity of his crime and thus did not effectuate JUVRA's purpose. In his view, the proper application of CP Section 8-110 requires the circuit court to give the most weight to CP Section 8-110(d)(5), "whether the individual has demonstrated maturity, rehabilitation, and fitness to reenter society sufficient to justify a sentence reduction," because JUVRA was enacted to provide sentence reductions for rehabilitated juvenile defendants. Trimble points to rejected amendments in the legislative history of JUVRA that would have prohibited defendants convicted of certain serious crimes from seeking sentence reductions as indication that the circuit court in his case gave improper weight to the severity of his offense. The State avers that the circuit court properly weighed the various factors and that its decision is entitled to deference.

Trimble's argument that rehabilitation should be the primary focus of a JUVRA motion is largely premised on the Maryland Supreme Court's decision in *Davis v. State*. 474 Md. 439 (2021). There, the Court considered CP Section 4-202, which governs juvenile court and delinquency proceedings, determining that for a decision for a reverse waiver[2] to a juvenile court, "the ultimate determinative factor that takes into account each of the other four factors" in CP Section 4-202(d) is the juvenile's amenability to treatment.

---

[2] A "reverse waiver" or "reverse transfer" occurs when a circuit court with original jurisdiction transfers jurisdiction to the juvenile court according to the process and considerations outlined in CP Section 4-202. *Rohrbaugh v. State*, 257 Md. App. 638, 654 (2023). "[O]riginal jurisdiction over the juvenile lies in the [circuit] court" in cases where the juvenile court lacks jurisdiction due to the juvenile's age and the crime charged. *Id.*

*Id.* at 466.  The *Davis* Court concluded that both CP Section 4-202(d) and Section 3-8A-06 of the Courts and Judicial Proceedings ("CJP") Article of the Maryland Code (2006, 2020 Repl. Vol.) must be construed in light of the purposes of the juvenile justice system as enumerated in CJP Section 3-8A-02.  *Id.* at 462–63.  Trimble likens CP Section 4-202(d) to CP Section 8-110(d) because both attempt to provide additional protections to juvenile offenders as being in the "interests of justice."  According to Trimble, because the Supreme Court has held that amenability to treatment is the most important factor in CP Section 4-202(d) given the statutory purposes, the rehabilitation factor must be the most important factor in CP Section 8-110(d) to effectuate JUVRA's purpose.

While Trimble is correct that Maryland's juvenile justice statutes have an overarching philosophy of promoting amenability and rehabilitation, there is nothing in CP Section 8-110 that indicates that rehabilitation should be given the most weight when considering a motion for sentence reduction.  Unlike CP Section 4-202(d) in conjunction with CJP Section 3-8A-02, CP Section 8-110 does not have enumerated purposes by which to determine how to weigh its factors.  In the absence of such guidance, the General Assembly has created a balancing test for JUVRA motions, requiring courts to consider the eleven factors in CP Section 8-110(d) without any one factor receiving special weight.

The decision of whether to grant or deny a JUVRA motion for reduction of sentence "generally rests in the discretion of the circuit court upon consideration of the required factors."  *Sexton*, 258 Md. App. at 541.  Absent a clear mandate from the General Assembly that one factor is entitled to greater weight, we decline to disturb the circuit court's broad discretion in reducing sentences under JUVRA.  *See Thompson v. State*, 412 Md. 497, 506

8

(2010) ("A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute . . . ." (quoting *Price v. State*, 378 Md. 378, 387 (2003))); *cf. Alston v. Alston*, 331 Md. 496, 507 (1993) ("The statutory factors listed [for determining awards of marital property] are not prioritized in any way, nor has the General Assembly mandated any particular weighing or balancing of the factors."); *In re Adoption/Guardianship No. 94339058*, 120 Md. App. 88, 105 (1998) ("[The statute governing termination of parental rights] does not require a trial court to weigh any one statutory factor above all others. Rather, the court must review all relevant factors and consider them together.").

The comparison to *Davis* is also inexact. The *Davis* Court held that amenability was the central consideration for determining whether a child "should be dealt with in the juvenile or the adult system, and ultimately, that invokes the amenability to treatment in the juvenile system." 474 Md. at 465. The issue of amenability to treatment is purely prospective and attempts to predict a juvenile's responsiveness to the beneficial aspects of the juvenile justice system compared to the adult system. It arises prior to a trial and conviction and serves as a potential prerequisite for moving forward with a juvenile's charges. Conversely, a JUVRA motion is almost entirely retrospective, assessing what an individual who has already been convicted has done between their sentencing and the time of the motion. A JUVRA motion is not about whether a defendant is tried in the juvenile court or the adult court but is instead about the sentence itself. CP § 8-110(b)(1) ("An individual described in subsection (a) of this section may file a motion with the court *to reduce the duration of the sentence*." (Emphasis added.)); *see Farmer v. State*, 481 Md.

9

203, 231 n.24 (2022) ("A sponsor of the Senate bill that was enacted as JUVRA remarked that the legislation would provide juvenile lifers *an opportunity to be released from prison by proving they have reformed their lives . . . .*" (Emphasis added.)). As such, although reverse waivers and JUVRA motions are both related to juvenile justice in some fashion, a JUVRA motion is not in the same posture as a reverse waiver. *Davis*'s holding that reverse waivers must be focused on amenability therefore does not require that JUVRA motions be focused on rehabilitation.

Further, CP Section 8-110(c) requires a court to find two overriding factors before it can reduce a sentence. First, it must determine that the individual is not a danger to the public. CP § 8-110(c)(1). Second, it must determine that "the interests of justice will be better served by a reduced sentence." *Id.* § 8-110(c)(2).[3] The General Assembly provided in CP Section 8-110(d) ten specific factors plus "any other factor the court deems relevant" to guide the court's determination on these two overarching considerations. Although an individual's rehabilitation is certainly a part of the equation for determining whether the interests of justice are better served by a reduced sentence, rehabilitation is not the only element of that consideration. Each of the remaining nine factors enumerated in CP Section 8-110(d) could contribute to the interests of justice determination in any given case, as could any unenumerated factor a court deems relevant.

---

[3] Senator West emphasized these two factors in his written testimony describing the proposed legislation: "A judge may not modify the sentence unless the judge finds, after a hearing, that **'the individual is not a danger to the public'** and that **'the interests of justice will be better served by a reduced sentence.'**" Senator West Testimony (emphasis in original).

10

We hold that the circuit court did not abuse its discretion in this case. Section 8-110(d) requires that the circuit court "consider the following factors when determining whether to reduce the duration of a sentence under this section." Thus, all that is required of a circuit court is that each factor is considered in the court's decision and that its decision is issued in writing. CP § 8-110(d)–(e). The court did so here by enumerating and addressing each factor in CP Section 8-110(d) based upon the evidence presented.[4] It was not required to weigh the rehabilitation factor more heavily than any other factor.

The court also did not abuse its discretion in considering the severity of Trimble's offense. Section 8-110(d)(2) requires that the circuit court consider the "nature of the offense," which by the plain language of the statute includes its severity. *See Nature*, Merriam-Webster, https://www.merriam-webster.com/dictionary/nature (last visited June 6, 2024) [https://perma.cc/5YME-DETT] (defining nature as "the inherent character or basic constitution . . . of a person or thing" or "a kind or class usually distinguished by fundamental or essential characteristics"); *see also Sexton*, 258 Md. at 537, 545–46 (commenting that the "circuit court should *again* weigh and address the factors" in CP Section 8-110(d) after having previously considered that Sexton was convicted for first degree premeditated murder, armed robbery, and use of a handgun in a crime of violence (emphasis added)); *In re Waters*, 13 Md. App. 95, 104 (1971) (holding that the "nature of the offense" factor in the statute governing waiver of juvenile court jurisdiction "encompass[es] not only the type of crime but the circumstances surrounding its

---

[4] For the reasons discussed in Section C, *infra*, Trimble's arguments that the circuit court did not properly consider his rehabilitation are unavailing.

11

commission. That a victim was beaten or shot during the course of a robbery in addition to having his property stolen is certainly of probative value on the question of waiver."). Therefore, it could not be error for the circuit court to consider the severity and details of Trimble's offense in deciding the motion for reduction, as the court was in fact *required* to consider the severity of the offense in ruling on Trimble's JUVRA motion.

Trimble argues that the primary goal of JUVRA was to "provide a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." According to Trimble, this meaningful opportunity for release "should be extended even to those who are serving sentences for particularly serious, violent felonies." In support, Trimble points to rejected amendments that would have excluded people serving life sentences without parole or those convicted of certain serious crimes from pursuing sentence reductions under JUVRA.[5] Because the General Assembly rejected those amendments, Trimble argues, it would be contrary to the legislature's intent to deny a JUVRA motion based primarily on the severity of the underlying crime.

Trimble places too much weight on rejected amendments. As the Supreme Court has long held and recently reaffirmed, "legislative rejection is not an infallible indicator of legislative intent." *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 651 (2024) (quoting *City of Balt. Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299, 329 (2006)). Accordingly,

---

[5] Trimble's motion for sentence reduction listed the categories of people that would have been excluded from JUVRA under rejected amendments, which included those convicted of: a crime of violence; murder of a minor or attempted first-degree rape; murder of a vulnerable adult or first-degree rape of a vulnerable adult; multiple murders; murder of a police officer; first-degree murder and a hate crime arising out of the same incident; and a crime involving the possession or discharge of a firearm inside a school building.

rejected amendments are "a rather weak reed upon which to lean in ascertaining legislative intent" because "the General Assembly may well have concluded that the rejected amendment warranted further investigation before acting on it, or decided not to enact the amendment for a myriad of other reasons." *Carmel Realty Assocs.*, 395 Md. at 329 (cleaned up). The legislature ultimately necessitated the consideration of the underlying offense in reviewing JUVRA motions for sentence reduction without excluding any category of crime from the relief afforded by JUVRA. Given the discretion afforded to circuit courts in reviewing JUVRA motions and the requirement that courts consider the nature of the offense, the circuit court was entitled to use its discretion in giving more weight to the severity of Trimble's underlying crimes.

## B. Trimble's Age at the Time of the Offense

The circuit court's finding regarding Trimble's age at the time of the offense reads: "Trimble was three or four months shy of his 18th birthday at the time of the killing of Nila Rogers. This factor weighs against reducing the sentence."

Trimble argues that the circuit court misapplied 8-110(d)(1), "the individual's age at the time of the offense." Trimble asserts that the legislative intent behind JUVRA indicates that the defendant's age can only be used as a mitigating factor, not as an aggravating factor. Specifically, Trimble points to JUVRA's goal of providing a class of defendants—those who were convicted as adults while under the age of 18—the ability to obtain release if they can demonstrate that they have been rehabilitated and will not pose a threat to society. This purpose, Trimble argues, was ignored by the circuit court because

13

it penalized Trimble for being just under the age of 18, the characteristic that entitles him to relief in the first instance.

In response, the State contends that allowing the age factor to serve only as a mitigating factor reduces the circuit court's discretion, which is contrary to the practice of giving judges a high degree of discretion in sentencing matters. Additionally, the State avers that age should be treated as a sliding scale, such that "the younger movant was at the time of the offense, the heavier this factor can be weighed in the movant's favor." The State likens the JUVRA sentence reduction factors to those in CP Section 4-202(d), which govern the decision of whether to transfer a case to juvenile court. In those instances, age is used for determining whether the defendant is eligible for transfer and considered "in connection with public safety and amenability to treatment." *Davis*, 474 Md. at 464–65. The State asserts that Section 8-110(d) does not require that age be used as a mitigating factor, just as Section 4-202(d) does not require age to be categorically mitigating.

We conclude that the circuit court did not misapply the "age at the time of the offense" factor in Section 8-110(d)(1). Nothing in Section 8-110 indicates that a court must only consider the movant's age as a mitigating factor. Indeed, Section 8-110(d) provides little guidance on how a court should consider each factor. As we have held previously, the decision to grant or deny a motion for reduction of sentence under JUVRA rests with the sound discretion of the circuit court so long as each enumerated factor is considered and the correct legal standard is applied. *Sexton*, 258 Md. App. at 541.

This conclusion is furthered by the presence of age as a factor in Section 8-110(d). Contrary to Trimble's assertion that the circuit court used his eligibility for a sentence

14

reduction as weighing against him, the "age at the time of the offense" factor would be superfluous if a circuit court could only use age as a mitigating factor. *Whitley v. Md. State Bd. of Elections*, 429 Md. 132, 149 (2012) (statutes should be "read as a whole so that 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory'" (quoting *Doe v. Montgomery Cnty. Bd. of Elections*, 406 Md. 697, 712 (2008))). Section 8-110(a) establishes the requirements for eligibility for sentence reduction, including that the individual be someone who "was convicted as an adult for an offense committed when the individual was a minor." CP § 8-110(a)(1).

By the time a circuit court is called upon to consider the factors in Section 8-110(d) and decide whether a sentence should be reduced, it must have already determined that the movant meets the requirements of Section 8-110(a). Given that the movant's status as a minor is a prerequisite for a motion to reduce their sentence, considering age as a factor would be duplicative of the eligibility determination if the circuit court could not use its full discretion to weigh age as either for or against sentence reduction.

## C. Trimble's Rehabilitation

The circuit court's findings regarding Trimble's rehabilitation were contained in related findings under CP Sections 8-110(d)(5) and (7). As to Section 8-110(d)(5), "whether the individual has demonstrated maturity, rehabilitation, and fitness to reenter society sufficient to justify a sentence reduction," the court concluded:

> Trimble is not fit to reenter society. It is not logically possible to conclude that someone diagnosed with Antisocial Personality Disorder, an organic, lifelong, chronic disorder characterized by deceitfulness and lack of remorse, has mystically gotten better over time.

15

What Trimble has "demonstrated", by formally making the ghastly request that Nila Rogers['s] body be exhumed for DNA testing in 2002, is that the symptoms of his disorder persist[—]that he lacks legitimate, sincere remorse and fails to conform to social norms with respect to lawful behaviors. See Factor 7, infra.

As to Section 8-110(d)(7), "any report of a physical, mental, or behavioral examination of the individual conducted by a health professional," the court stated: "Trimble has been diagnosed by every psychiatrist involved in this case over the years as having Antisocial Personality Disorder, previously referred to as psychopathy, sociopathy or dissocial personality disorder, according to the Diagnostic and Statistical Manual of Mental Disorders (DSM-5-TR)." The court then quoted the diagnostic criteria of ASPD contained within the DSM-5-TR, including, *inter alia*, deceitfulness, "reckless disregard for safety of self or others," and lack of remorse. "While studies suggest that remission of [ASPD] conduct can occur as the person ages," the court continued, "it would appear as though even modern authorities agree . . . that this disorder is so deeply ingrained that rehabilitation/remission does not ordinarily occur." Based upon its assessment of the evidence produced by the parties, the court was "not persuaded that Trimble's disorder has remitted significantly or that, if it has, the risk of extraordinary violence has been abated. This factor weighs against the sentence modification."

Trimble argues that the circuit court misunderstood his ASPD diagnosis. Specifically, he asserts that the circuit court "erroneously assumed that [his ASPD] was permanent and unremitting regardless of the many positive things Mr. Trimble has done." Trimble indicates that the court's conclusion that his ASPD has not remitted directly contradicts the scientific sources offered to the court as evidence and relied upon by the

16

court itself. The State contends that the court used its discretion to weigh conflicting evidence regarding Trimble's rehabilitation and fitness to reenter society, including weighing contradictory scientific evidence about ASPD as a diagnosis.

The circuit court did not err in considering CP Sections 8-110(d)(5) and (7). The circuit court's written order made clear that it understood the legal standard required for both of these factors. The court considered how Trimble's ASPD diagnosis affected his ability to reenter society, ultimately concluding that the diagnosis rendered his apparent rehabilitation dubious. This was an appropriate application of CP Sections 8-110(d)(5) and (7).

Trimble believes that the court reached an incorrect conclusion regarding his rehabilitation and misunderstood his ASPD diagnosis. However, the circuit court has great discretion in considering a JUVRA motion to reduce a sentence, particularly where there is conflicting evidence. "Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder." *State v. Smith*, 374 Md. 527, 533–34 (2003) (quoting *State v. Stanley*, 351 Md. 733, 750 (1998)). "We give 'due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.'" *Moye v. State*, 369 Md. 2, 12 (2002) (quoting *McDonald v. State*, 347 Md. 452, 474 (1997)).

Given the discretion owed to the circuit court in weighing conflicting evidence and making findings of fact, we conclude the circuit court made no error in its consideration of the evidence surrounding the demonstrated maturity and rehabilitation factor. The record contains evidence of Trimble's diagnosis, scientific studies about ASPD and its longevity,

17

and how they relate to whether Trimble may be fit to reenter society. The circuit court was entitled to weigh that evidence as it saw fit. Despite Trimble's argument that the court did not meaningfully consider Trimble's rehabilitation, the court did consider the evidence presented to it and decided that when viewed in conjunction with Trimble's ASPD diagnosis, the evidence of Trimble's purported rehabilitation did not support reducing his sentence.

### D. State's Motion to Dismiss

The State's brief includes a motion to dismiss which asserts that a JUVRA motion for sentence reduction is only reviewable if the circuit court denied the motion based upon lack of authority to modify. Trimble responds that two recent cases from this Court, *Johnson v. State*, 258 Md. App. 71 (2023), and *Sexton v. State*, 258 Md. App. 525 (2023), allow review of JUVRA motions if the movant alleges that the circuit court committed an error of law.

In *Johnson*, we stated that a sentence reduction motion under CP Section 8-110 "bears at least a superficial similarity to" a motion for modification of sentence under Maryland Rule 4-345(e). 258 Md. App. at 87. Relying on the Supreme Court's decision in *Hoile v. State*, 404 Md. 591 (2008), which held that a purely discretionary denial of a Rule 4-345(e) motion to modify is generally not appealable, we concluded that the circuit court in *Johnson* made legal determinations regarding Johnson's eligibility to seek relief which were reviewable as final judgments. *Johnson*, 258 Md. App. at 87. *Sexton* relied on *Hoile* and *Johnson* to reach the same conclusion that only "denial of a motion 'entirely' within a sentence court's discretion is barred" from appeal and thus allowed an appeal

18

asserting legal errors to proceed. *Sexton*, 258 Md. App. at 540–41 (quoting *Hoile*, 404 Md. at 617).

Here, Trimble's primary allegations are that the circuit court improperly interpreted and applied CP Section 8-110. Thus, under our precedent, the circuit court's denial of the JUVRA motion is an appealable final order because it was based upon an alleged error of law. The State's motion to dismiss the appeal is therefore denied.

**MOTION TO DISMISS APPEAL DENIED. JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**